## MALONE v. PROCTOR & GAMBLE CO.
### Patent Appeal No. 3147.

Court of Customs and Patent Appeals.
May 29, 1933.

155

John D. Rippey and Lawrence C. Kingsland, both of St. Louis, Mo., for appellant.

Allen & Allen, of Cincinnati, Ohio (Marston Allen, of Cincinnati, Ohio, of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is a trade-mark opposition proceeding in which appellant brings to this court for review a decision of the Commissioner of Patents, affirming a decision of the Examiner of Trade-mark Interferences, dismissing the notice of opposition of appellant and granting the registration applied for by appellee.

The application of appellee was filed March 7, 1930, for the registration under the Trade-Mark Act of February 20, 1905, as amended (15 USCA § 81 et seq.), of the word "Polo" as a trade-mark for toilet and bath soap. The mark is in the form of the word "Polo" in heavy block letters; beneath this is a representation of approximately one-half of a cake of soap, the other half being obliterated by what represents water in wavelike form. It is clear that the word "Polo" is the dominating feature of said mark.

The application states that said trademark has been continuously applied to such goods since September 23, 1929; it further states that the applicant is the owner of certain other registered marks, and such registrations appear in the record. Two of such registrations are dated March 11, 1890, and are for marks of which the word "Polo" is the dominating feature, applied to soap for "laundry and general purposes." It appears that upon their expiration such registrations were not renewed. Another registration issued to appellee is dated January 26, 1909, for a mark in which the word "Polo" was the dominating feature, applied to soap for laundry use; this registration likewise was not renewed upon its expiration. A fourth registration was issued to appellee on January 26, 1909, for a mark in which the word "Polo" was the dominating feature, applied to soap for laundry use, which registration was renewed upon its expiration.

On July 3, 1923, there was issued to appellant registration No. 169751 for the mark "Poro," used upon toilet preparations, among them "preparations for use as shampoo."

Appellant on or about June 2, 1930, filed with the Commissioner of Patents a notice of opposition to the registration of the mark applied for by appellee, alleging that the marks "Poro" and "Polo" are confusingly similar when applied to toilet and bath soaps. Several other grounds of opposition are alleged, but we find it necessary to consider only one of them, which reads as follows: "5. That the applicant, The Proctor & Gamble Company, has long known of the use of the trade-mark Poro by opposer; and has known of the use of said trade-mark Poro by the opposer as a trade-mark for toilet and bath soap; that the applicant, The Proctor & Gamble Company, has, for a long period and since long prior to September 23, 1929, known of the popularity of opposer's soap and the trade-mark Poro applied thereto, and has, in fact, manufactured said soap for opposer with full knowledge of the use thereon of the trade-mark Poro by opposer; that, by such conduct, the applicant, The Proctor & Gamble Company, has become estopped, and it is now estopped, from denying the ownership of the trade-mark Poro by the opposer, applied to toilet and bath soap, and is estopped from asserting the right to use and to register the deceptively similar mark Polo, applied to toilet and bath soap; in view of the premises, it would be inequitable and damaging to opposer to permit the applicant, The Proctor & Gamble Company, to register said deceptively similar mark Polo, applied

to toilet and bath soap, because of the later adoption and use by said applicant of said deceptively similar mark Polo, applied specifically to toilet and bath soap."

In its answer to the notice of opposition appellee alleged use and ownership of the trade-mark "Polo," applied to soap, long prior to the first use by appellant of the mark "Poro" as a trade-mark. With respect to appellant's charge of estoppel as above set out, appellee answered as follows: "6. Applicant denies that it has long known of the use of the trade-mark 'Poro' by the Opposer, or that for a long period prior to September 3, 1929, it has manufactured said 'Poro' soap for the Opposer with full knowledge of the use thereon of the trade-mark 'Poro' by the Opposer, and that by such conduct the Applicant is now estopped from denying ownership of the trade-mark 'Poro' by the Opposer, or is estopped from asserting its right to use and to register the mark 'Polo' for toilet and bath soap together with the representation of the partially submerged cake of soap rising from the waves. Applicant further says that it is the owner of the trade-mark 'Polo' for soap, because of its continuous use of the same since prior to the year 1900, and did not adopt this mark subsequent to the use of 'Poro' by Opposer, all of which is and has been long known by the Opposer, and Applicant denies the facts set forth in paragraph 5 of the Notice of Opposition and moves that this paragraph be stricken from the Notice as having no legal force and effect."

Each of the parties took testimony. The Examiner of Trade-mark Interferences held that the marks "Polo" and "Poro" were confusingly similar when applied to toilet and bath soap; that appellee was the user of the trade-mark "Polo" on laundry soap long prior to the first use by appellant of the mark "Poro"; that such use was continued by appellee until about 1928, when, due to trade conditions, it was discontinued; that in the latter part of 1929 the use of the word "Polo" was resumed by appellee and it was then used on soap for the toilet and bath; that in view of the prior registration by appellee of the mark "Polo," appellant could not make the claim that appellee was not the owner of the mark "Polo" applied to soap; that there was no evidence of abandonment of the mark "Polo" by appellee; and that it was not estopped from contending that it was the owner of the mark "Polo" on soap.

Upon appeal to the Commissioner of Patents, the commissioner held that the marks "Polo" and "Poro," and the goods upon which they are used, are substantially the same and that appellee was the prior user of the mark; that it had not abandoned the use of the same at any time, and that it was not estopped from asserting ownership of, and the exclusive right to use, the mark "Polo" upon bath and toilet soap. He therefore affirmed the decision of the Examiner of Trade-mark Interferences.

We concur in the findings of the Commissioner that appellee began the use of the mark "Polo" upon laundry soap prior to the year 1890, and that the marks "Polo" and "Poro" are confusingly similar when used upon toilet and bath soap.

It appears from the record that appellant had used the mark "Poro" upon a shampoo preparation as early as the year 1915; that in 1922 she began to use said mark upon a soap in cake form for the washing and cleansing of the hair, and was so using said mark at the time appellee's application was filed; that appellee adopted and used the mark "Polo" upon laundry soap continuously from about 1889 to the end of 1927, when the demand for that brand of soap became very light; that it then discontinued the use of said mark until 1929, when it applied said mark to a soap intended for bath and toilet use; that such use of said mark continued to the time of filing its application involved herein, and thereafter; that appellant has a very extensive business in the sale of toilet preparations, and appellee is one of the large soap manufacturers of the country; that in addition to manufacturing and selling its own brands of soap, appellee manufactured soap for others under brands not owned by appellee, and for such manufacture it maintained a "Private Brands" department; that in December, 1928, appellee solicited from appellant the business of manufacturing appellant's "Poro" soap. In a letter to appellant under date of December 21, 1928, appellee stated as follows: "As stated in our other letter we feel that we are in wonderful shape to handle your brand of Poro Soap and give you a perfume and quality that will be satisfactory in every respect."

In a letter from appellee to appellant under date of March 16, 1929, appellee stated: "Mr. Fletcher has referred to the writer your letters about your contract for Poro Soap and from their contents am sure took care of you as well as (if not better than) the writer could have done. At any rate we are both glad you enjoyed your visit to Cincinnati and that you are now confident that we are

shaped to take care of your business on Poro Soap. There is no question about this point so you may rest easy that everybody will be satisfied."

On March 22, 1929, appellant wrote to appellee as follows:

"Pursuant to our telephone conversation today, we are enclosing herewith our order #3746 for 2000 gross of Poro Skin & Scalp Soap, cut to weight 3½ ounces, to be cut the shape of your 'Curcio' soap, shade to be exactly the same as our present soap, to be stamped Poro College, St. Louis, U. S. A. on one side, and Poro Skin & Scalp Soap on the other; lettering to be the same as on our present soap; wrappers to be furnished by you and are to be identically the same as the ones we are now using; soap to be packed 1 gross to a corrugated box, with the lettering stenciled on to read as follows: Poro Skin & Scalp Soap, Poro College, St. Louis, Mo.; soap to be shipped F. O. B. St. Louis, and, as we understand it, we are to have the privilege of drawing the soap out over a period of a year in quantity lots of 250 gross, at the cost of $4.30 per gross.

"We are sending you today under another cover 6 bars of our soap, and the die-plates which we told Mr. Metz we would send.

"If there is anything more we can do to assist you in making up our soap, feel free to call on us.

"We are expecting the first 250 gross by May 1st."

It appears from the record that such order was accepted and that at the time of filing its application, appellee had manufactured and shipped to appellant 1,305 gross of Poro skin and scalp soap, appellee applying the mark "Poro" to each cake of soap shipped; that on March 18, 1930, 11 days after filing its application herein involved, appellee shipped to appellant 350 gross of said soap, with the mark "Poro" applied to each cake thereof; that in August, 1930, another contract was entered into between appellant and appellee whereby appellee agreed to manufacture for appellant "1800 gross Poro Skin and Scalp Soap," "shipments to be ordered out in 350 gross quantities within twelve months period."

Presumably appellee made a profit out of its business with appellant.

It appears that on December 2, 1929, an advertisement appeared in a Memphis, Tenn., newspaper, advertising appellee's bath and toilet soap, in which advertisement the word "Poro" was used and not "Polo." Appel-

lant's attorneys a few days thereafter called this matter to the attention of appellee's attorneys in a letter which is in the record. On December 9, 1929, appellee replied to this letter, stating that in setting up the advertisement an error was made in using the letter "r" instead of the letter "l." This letter contains the following paragraph: "We are very careful in handling private brand business to see that no shipments are made except to those people *who own the brands that we are making.* All of the private brand business is handled at this office, and there is no chance of any of our district sales organization getting hold of any of the private brands to offer to dealers or others. (Italics ours.)"

On December 14, 1929, appellant replied to said last-mentioned letter, protesting against appellee's use of the mark "Polo" upon the ground of confusing similarity with appellant's mark "Poro." This letter was replied to by the attorneys for appellee on December 18, 1929, the first paragraph of which reply reads as follows: "Our clients, The Proctor & Gamble Company, have asked us to write you concerning their use of the mark 'Polo' for Soap, which you appear to consider might cause confusion in the trade with the 'Poro' mark of your client's product. Considering the fact that Proctor & Gamble manufacture the Poro Soap for your client, and that they do not wish to adopt an unfriendly attitude in connection with their use of the mark 'Polo' as their business relations have been entirely satisfactory, it would seem that the matter should be considered from other than the usual points of view in connection with alleged trade-mark infringement."

Said letter goes on to recite appellee's use of the mark "Polo" and concludes with the statement that if there is any confusion between the two marks, appellee had priority of use to its mark.

It will be noted that the foregoing correspondence with respect to the use of the two marks began and terminated during the period when there was an existing agreement between appellant and appellee for the manufacture and shipment by appellee of 2,000 gross of "Poro" soap, said mark being applied to each cake of said soap by appellee.

Under the statement of facts hereinbefore set out, we find it necessary to consider only one question, to wit, whether, at the time of the filing of appellee's application, it was estopped from claiming the exclusive right to the mark "Polo" applied to bath and toilet soap.

It is clear that if appellant, at the time that appellee filed its application herein involved, had the right to use the mark "Poro" upon her soap, then appellee did not have the exclusive right to the use of the word "Polo" upon bath and toilet soap, the marks being confusingly similar as used by the parties.

Ownership of the mark "Poro" was not essential to enable appellant to maintain opposition herein. California Cyanide Co. v. American Cyanamid Co., 40 F.(2d) 1003, 17 C. C. P. A. 1198.

Section 2 of the Trade-Mark Act of February 20, 1905, as amended by Act Feb. 18, 1909 (15 USCA § 82), requires, in order to create any right whatever in the party filing an application for registration, that there be filed a verified declaration to the effect that, among other things, "no other person, firm, corporation, or association, to the best of the applicant's knowledge and belief, has the right to use such trade-mark in the United States, either in the identical form or in such near resemblance thereto as might be calculated to deceive. * * *"

Appellee contends that appellant may not raise the question of estoppel here, stating as ground for such contention that laches is a defense and can never be used as a weapon of offense.

It is true that, as a general rule, mere acquiescence by the owner of a trade-mark in its use by another, and laches in seeking redress, does not affect the ownership and exclusive right of the owner to use of such mark, and if nothing more were involved here there would be no ground upon which estoppel against appellee could be based; but if there have been affirmative acts of appellee which prevent it from asserting the exclusive right to use the mark "Polo" upon bath and toilet soap, such acts may be shown and relied upon by appellant to prevent registration of appellee's mark.

In the case of Heger Products Co. v. Polk Miller Products Corp., 47 F.(2d) 966, 967, 18 C. C. P. A. 1106, the appellant was the applicant, as is appellee here; appellee there was the opposer, as the appellant is here. The opposer in that case contended that the appellant was estopped from claiming the right of registration by reason of certain acts of its officials. In our opinion in that case the court, speaking through Presiding Judge Graham, said: "We shall first examine the question of estoppel raised on this record, for it is quite evident that, if the appellant, by its affirmative acts, has lulled the appellee into security, and has induced it to believe that the use of its mark was unobjected and consented to, then it would seem to follow that the appellant should be precluded from claiming the exclusive right to the use of said mark."

After examining the facts and holding that estoppel had not been established, we said: "We should not be understood as here holding that estoppel may not arise by the acts of the parties which would prevent registration. All we desire to hold is that the facts presented in this case constituting acquiescence, merely, do not raise such an estoppel. The fact that the agents of the appellant sold the goods of appellee as their own to customers constituted a fraud and one which could have been restrained in equity by the appellee, but it was not such a circumstance as to create an estoppel against the appellant in this proceeding, which might be asserted by the appellee."

We thus come to the consideration of whether in the case at bar there had been, at the time of filing its application, affirmative acts by appellee which created an estoppel against the granting of its application for registration.

Appellee solicited from appellant the business of manufacturing its Poro soap; appellant entered into a contract with appellee whereby the latter should manufacture for appellant 2,000 gross of such soap with the mark "Poro" applied to each cake thereof by appellee. That contract had not been completed at the time that appellee filed its application for registration, and there remained 695 gross of soap to be delivered to appellant under said contract. Appellee, at the end of the contract period, could have compelled appellant either to accept the balance of 695 gross of soap or to respond to appellee in damages for failure to do so.

Can it be conceived that any court of equity would have granted relief to appellee by requiring appellant to desist from the use of the mark "Poro" upon the soap manufactured and to be manufactured under said contract? It seems too clear for argument that, at the time appellee filed its application, appellant had the right to sell the soap manufactured and to be manufactured by appellee under said contract, with the mark "Poro" applied to each cake thereof by appellee in the course of its manufacture.

Appellee knew when it entered into said contract that should it, during the life of said contract, assert an exclusive right to the word "Polo" upon toilet and bath soap, appellant would be injured thereby if the marks

were confusingly similar, and that such assertion of right would be inconsistent with the contractual relations between the parties. If appellee contemplated asserting an exclusive right to the use of the mark "Polo" upon bath and toilet soap during the life of such contract, appellee should have so advised appellant before said contract was entered into. Not having so spoken, it was estopped from making any such assertion, at least during the life of such contract, and the application of appellee for registration is an assertion of such right. Therefore, at the time of filing said application, appellee was estopped from claiming the right of registration of the mark "Polo" upon bath and toilet soap.

Having reached this conclusion, we do not find it necessary to consider any of the other issues raised by the parties.

 Nothing herein should be construed as passing upon the validity of the existing registration of "Polo" by appellee for use upon laundry soap, or the registration by appellant of the mark "Poro" applied to "preparations for use as shampoo." Both of such registrations are presumptively valid and they are not affected by our decision herein.

For the reasons stated, the notice of opposition should be sustained and the application of appellee rejected.

The decision of the Commissioner of Patents is reversed.

Reversed.