35 C.C.P.A.(Patents)

### WEST DISINFECTING CO. v. OWEN.
### Patent Appeal No. 5367.

Court of Customs and Patent Appeals.
Jan. 6, 1948.

Harvey B. Jacobson, of Washington, D. C. (J. Edward Burch, of Washington, D. C., of counsel), for appellant.

Lester L. Sargent, of Washington, D. C. (Charles R. Allen, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in a trade-mark cancelation proceeding from the decision of the Commissioner of Patents, 69 U.S.P.Q. 439, reversing the decision of the Examiner of Interferences sustaining appellant's petition for the cancelation of appellee's registered mark "O-N," on a black background, for use on preparations for colds.

Appellee's mark, registration No. 377,500, was registered May 7, 1940, under the Trade-Mark Act of February 20, 1905, 15 U.S.C.A. § 81 et seq., on an application filed November 4, 1939.

Appellant's petition for cancelation was filed April 13, 1944, pursuant to section 13 of the Trade-Mark Act of February 20, 1905, and involves the confusion in trade clause of section 5 of that act.

In its petition for cancelation, appellant alleged that it had used the trade-mark "CN," on a black background, since about July 15, 1899; that its mark was registered July 21, 1903, registration No. 40,795, on an application filed June 10, 1903, for use on drugs and chemicals, which registration was renewed August 8, 1905, registration No. 45,143, on an application filed April 26, 1905, for use on similar goods; and that its trade-mark was also registered August 2, 1932, on an application filed March 2, 1931, registration No. 296,198, for use on "air-purifying preparations, antiseptics, antisep-

tic preparations, animal dips, deodorants, deodorizing preparations, disinfectants, liquid disinfectants, disinfecting preparations, germicides; insecticides in liquid, powder, and solid form; chemical preparations for use in disinfecting and cleaning bowls, pipes, etc.; chemical preparations for air-purifying purposes * * *."

It is further alleged in appellant's application for cancelation that the goods of the parties possess the same descriptive properties; that the marks of the parties are confusingly similar; and that appellant deems itself injured by the registration of appellee's trade-mark.

In answer to appellant's petition for cancelation, appellee stated that he was not informed as to many of the allegations contained in appellant's petition for cancelation, and denied that appellant was entitled to the exclusive use of its mark "CN" for use on drugs and chemical preparations and goods of like character.

It may be stated at this point that the only issue raised in the Patent Office and in the briefs of counsel for appellee, prior to the oral arguments in this court, was whether the trade-marks of the parties were confusingly similar when used on their respective goods. At the time of the oral arguments in this court, the question was raised from the bench as to whether the Trade-Mark Act of July 5, 1946, effective July 5, 1947, 15 U.S.C.A. § 1051 et seq., was applicable to the issues here involved, and specifically whether section 47(b) and section 19 of that act should be considered by this court, in view of the record here presented. Counsel for appellee were in disagreement as to the application of that act to the issues here involved. A supplemental brief was filed by counsel for appellee in which it was stated by Mr. Lester L. Sargent, one of counsel for appellee, that the new Trade-Mark Act had application to the issues here involved, particularly section 19 of that act relating to laches; whereas Mr. Charles R. Allen, according to the supplemental brief of counsel for appellee, disagreed with Mr. Sargent as to the application of the provisions of that section.

The first question for our consideration is whether the marks of the parties are confusingly similar as used on their respective goods.

It appears from the record that at the time appellee filed his application for registration he, in accordance with Rule 31 of the Rules of Practice in the United States Patent Office, 35 U.S.C.A.Appendix, filed a specimen, or facsimile, of the mark as actually used on his goods. It appears, therefrom, that appellee's mark "O-N" was used on a medicinal preparation for coughs due to colds, which preparation included a variety of ingredients, such as beechwood creosote, an oily antiseptic liquid used both externally and internally as an antiseptic. See Webster's New International Dictionary, 2nd Edition, 1939, and United States Dispensatory, 23rd Edition, 1943, page 352. It also appears from the specimen that appellee's cold preparation is "Mentholated-Creosoted."

It further appears from the record that appellant's mark "CN" has been continuously used by appellant since about July 15, 1899, on drugs and chemicals and, as hereinbefore stated, its mark was registered July 21, 1903, which registration was renewed August 8, 1905, for use on drugs and chemicals, and that appellant's trade-mark was also registered August 2, 1932, for use on various preparations hereinbefore set forth.

The term "drugs" is defined by lexicographers as "Any substance used as a medicine, or in the composition of medicine (Webster's New International Dictionary, 1932), or in making medicines (Webster's New International Dictionary, 2nd Edition, 1939), *for internal or external use: * * *"* (Italics ours.)

The Examiner of Interferences was of opinion that the goods of the parties belonged to the "class of medicinal or pharmaceutical preparations which would be reasonably likely to have a common source of personal origin," and that the goods possessed the same descriptive properties. In support of that conclusion, the examiner cited the case of Campbell Products, Inc. v. John Wyeth & Bro., Inc., 143 F.2d 977, 31 C.C.P.A., Patents, 1217, where it was held that a non-poisonous collodial aluminum-hydroxide fortified with "Novatro-

pine" (homatropinemethylbromide), used internally for the treatment of peptic ulcers and gastric hyperacidity on the one hand, and poisonous externally-applied lotion for treatment of skin-disease impetigo on the other hand, possessed the same descriptive properties. The examiner further held that the trade-marks were confusingly similar, and, accordingly, sustained appellant's petition for cancelation of appellee's trade-mark.

The Commissioner of Patents, on appeal, stated that in view of our decision in the case of Mulhens & Kropff. Inc., v. Adolph C. Onnen, 37 F.2d 435, 17 C.C.P.A., Patents, 831, it might be properly held that the goods of the parties did not possess the same descriptive properties. He further stated, however, that in the decision in the case of Vick Chemical Co. v. Central City Chemical Co., 75 F.2d 517, 22 C.C.P.A., Patents, 996, it was held that medicated salve, nose and throat drops, and medicated cough drops on which appellant there used the trade-mark "Vicks" possessed the same descriptive properties as insecticides on which appellee used the trade-mark "Lix", but that as the court in that case held that considering the difference in the goods and the difference in the marks, the marks were not confusingly similar, he was of opinion that considering the difference in the goods of the respective parties in the instant case, and the difference in the involved marks, there was no likelihood of confusion by the concurrent use of the parties of their respective marks on their goods. The commissioner further stated that appellee had used his mark on his goods for "nearly twenty years," that there was no evidence of actual confusion between the marks of the parties; that appellee's mark is a "valuable business asset" and that his registration should not be lightly canceled and, accordingly, reversed the decision of the Examiner of Interferences.

It is true, as argued by counsel for appellee, and as held by the commissioner, that there is a difference in the goods of the parties and that there is also a difference, although slight, in the marks of the parties. However, we are of opinion, as was the court in the case of Vick Chemical Co. v. Central City Chemical Co., supra, that the goods of the parties possesses the same descriptive properties.

Drugs are substances used as a medicine, although appellee's goods are used internally, whereas appellant's goods are used externally. Each, however, as hereinbefore observed, has antiseptic properties.

It appears from the record that appellant's product was advertised for use as a gargle and mouthwash (see exhibit 14) for at least ten years prior to the taking of the testimony in this case—August 1944. It further appears from the evidence that the goods of the parties are advertised in various magazines and over the radio, although apparently their advertisements over the radio are somewhat limited in scope; that appellant's sales in 1943 amounted to $368,354; that appellant's goods were sold throughout the United States; that from 1939 to the time of the taking of the testimony, appellant expended approximately $356,422 in advertising its goods and its trade-mark, and that during the same period its sales amounted to approximately $1,774,000; that appellee sold his goods, including his antiseptic, throughout the south-eastern part of the United States only; that his sales amounted to $82,000 during the year 1943; and that his sales during 1944 increased about fifteen per centum over his sales in 1943.

It is evident that the goods of the parties are used as a medicine and that they are drugs within the meaning of that term, as defined by the lexicographers. Furthermore, it appears from the record that appellee, in the natural course of his business, extended the use of his trade-mark "O-N" to an antiseptic for external use and, as is stated in the record, his antiseptic will usually relieve "discomfort due to athletes foot, poison oak, mosquito bites * * * and other simple skin irritation in a few minutes." Accordingly, appellee was of opinion that an antiseptic for external use possessed the same descriptive properties as a preparation for colds, upon which he used his trade-mark "O-N." Furthermore, as we interpret appellee's testimony, it would be a natural thing for one engaged in the manufacture of antiseptics to produce a medicinal preparation for coughs due to colds.

It further appears from the record that for twenty-eight years prior to appellee's adoption and use of the trade-mark "O-N" on his product, appellant had used its mark "CN" on drugs and chemicals, including antiseptics for external use, and had registered its mark twenty-four years prior to appellee's adoption and use of his mark, and thirty-seven years prior to the date of appellee's registration. We are of opinion, therefore, for the reasons hereinbefore stated, that the goods of the parties possess the same descriptive properties, and that the marks "O-N" and "CN" are so similar as, in our opinion, to cause confusion in the mind of the public as to the origin of the goods of the respective parties.

■■■ We come now to a consideration of whether the application of section 19 of the Trade-Mark Act of July 5, 1946, effective July 5, 1947, Chap. 540, 60 Stat. L. 427 et seq., is applicable to the issues here involved. It is argued in the supplemental brief filed by counsel for appellee, Lester L. Sargent, in which his associate counsel, Charles R. Allen disagrees, that as appellee's trade-mark was used for more than five years prior to the petition for cancelation, the registration was incontestable under that act, and that laches on the part of appellant should be taken into consideration.

It affirmatively appears from the record that appellee had no knowledge, actual or implied, of the use of appellant's trade-mark on its goods until April 1944, substantially four years after appellee's trade-mark was registered, and many years subsequent to the registrations, as hereinbefore noted, of appellant's trade-mark, at which time appellee received a letter notifying him of appellant's trade-mark for use on its goods, although appellee's trade-mark was registered May 7, 1940. It is obvious, therefore, that the element of estoppel whereby appellee might have been injured or caused to believe that he had a right to use his registered mark because of the delay on the part of appellant in filing its cancelation proceeding or otherwise objecting to the use of appellee's mark, is not present in the instant case.

Furthermore, the elements of estoppel whereby appellee may have been injured through the delay by the proceedings here involved, are wholly absent in this case. It is well settled that before the doctrine of laches may be applied, something more than a mere lapse of time must exist. See Menendez v. Holt, 128 U.S. 514, 523, 9 S.Ct. 143, 32 L.Ed. 526; Johnston v. Standard Mining Co., 148 U.S. 360, 370, 13 S.Ct. 585, 37 L.Ed. 480; and Standard Oil Co. v. Michie, D.C., 34 F.2d 802, 804. It should be recalled that the cancelation proceeding here involved was filed under the provisions of section 13 of the Trade-Mark Act of February 20, 1905.

■■■ One of counsel for appellee, as hereinbefore noted, argues that as appellee's mark has been used for more than five years, it is incontestable under section 15 of the Trade-Mark Act of July 5, 1946, effective July 5, 1947. It may be observed in this connection that 'appellee's trademark has not been registered under that act and, therefore, the provisions as to the incontestability of appellee's mark is not a proper issue in this case.

The issues in the instant case are clearly distinguishable from our decision in the case of Willson v. Graphol Products Co., Inc., Pat.App., 165 F.2d 446, decided concurrently herewith, where it was held that, owing to the state of the record there presented, the question of laches, as provided in section 19 of the Trade-Mark Act of July 5, 1946, effective July 5, 1947, was a proper issue in the case and, for that reason, the case was reversed and remanded.

Although counsel for appellee suggest that section 19, supra, relating to laches, has application to the issues here involved, they do not suggest that should the case be remanded to the Patent Office they might introduce evidence relating to that issue.

For the reasons stated, the decision of the Commissioner of Patents is reversed.

Reversed.

BLAND, Associate Judge, sat during the argument of this case, but resigned before the opinion was prepared.