44 C.C.P.A. (Patents).
**SALEM COMMODITIES, Incorporated,**
**Appellant,**
**v.**
**The MIAMI MARGARINE COMPANY,**
**Appellee.**
**Patent Appeal No. 6277.**

United States Court of Customs
and Patent Appeals.
May 27, 1957.

Elisha Hanson, Arthur B. Hanson, and Emmett E. Tucker, Jr., Washington, D. C., for appellant.

J. Gibson Semmes, Washington, D. C. (Semmes & Semmes, Washington, D. C., of counsel), for appellee.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON, retired, Associate Judges.

O'CONNELL, Judge.

This is an appeal from the decision of the Assistant Commissioner of Patents, 106 U.S.P.Q. 411, reversing the decision of the Examiner of Interferences in a trademark opposition proceeding and holding appellee to be entitled to registration on the Principal Register, under the Trade-Mark Act of 1946, 15 U.S.C.A. § 1051 et seq., of the notation "Nu-Maid" displayed in block letters and used as a trademark for margarine. The opposition was based on alleged prior trademark use by appellant of the term "Nu Made."

It is not disputed that appellant is the owner of Trademark Registration No. 336,786, granted under the Act of 1920, for the trademark "Nu Made" as applied to salad dressing, sandwich spread and French dressing, and that appellant and its predecessors in business have continuously used that mark in connection with the sale of mayonnaise since 1935, a date prior to March 5, 1936, which is the earliest date alleged by appellee for use of its "Nu-Maid" mark. There is no definite evidence as to the extent of appellant's use of its mark.

The record shows that in 1927 or 1928 appellee began to use, as a trademark for margarine having a coconut oil base, the words "Nut Maid," associated with a picture of a bonneted girl's head. About March 5, 1936, as a result of using cottonseed and soybean oil as a margarine base, it was decided to change the mark to "Nu-Maid," while retaining but not registering the same picture and package design. Since that time the "Nu-Maid" mark has been extensively used and advertised by appellee, but appellee delayed for almost twelve years in making the application, February 13, 1948, for the registration of the words "Nu-Maid" which constitutes its mark here in issue.

There is no evidence of record showing that actual confusion in trade has arisen from the concurrent use by appellant and appellee of their respective marks.

The Examiner of Interferences held that appellee could derive no benefit from its use of the "Nut Maid" mark, and that appellant's use of "Nu Made" was prior to appellee's use of "Nu-Maid." He further found that those marks and the goods to which they were applied by the respective parties were so similar as to be likely to cause confusion when concurrently used in trade.

The Assistant Commissioner on appeal from the examiner's decision held that appellant must be presumed to have known of appellee's use of the "Nu-Maid" mark and that appellant's failure to object to such use created an estoppel against any right to oppose appellee's registration thereof. She further held that, considering the manner in which appellee's mark had been used in association with a picture of a girl's bonneted head, confusion in trade would not be likely to result from concurrent use by the parties of the marks "Nu Made" and "Nu-Maid."

We agree with the Examiner of Interferences that appellee can derive no material benefit here from its use of the mark "Nut Maid." While that mark differs from "Nu-Maid" only by one letter and a hyphen, the significance of the two marks is entirely different, the former indicating a nut product while the latter suggests a product which is either new or freshly made. The fact that appellee's marks were used in conjunction with the hereinbefore described picture and the package design is not material, since the application here involved is for registration of the words "Nu-Maid" only.

■■ We are also in agreement with the decision of the Examiner of Interferences on the issue of confusing similarity. In holding that the marks were not confusingly similar, the Assistant Commissioner relied on the fact that appellee's mark had always been associated with a picture of a girl. That picture, however, forms no part of the mark here sought to be registered and, in fact, as stated by the Assistant Commissioner, forms the subject of a registration already granted to appellee on a trademark for margarine. There is no assurance that appellee will always use the picture as it has been used in the past. Moreover, since it is here seeking to register the words "Nu-Maid," standing alone, it must be presumed that it intends to use them in that manner. See Lucien Lelong, Inc. v. Elgin American Manufacturing Co., 83 F.2d 690, 23 C.C.P.A., Patents, 1139, and Philadelphia Inquirer Company v. Coe, Com'r Pats., 49 U.S.P. Q. 346. Accordingly, the fact that appellee's mark had been customarily used with the picture is nowise controlling here.

The words "Nu Made" and "Nu-Maid" are closely similar in appearance and identical in sound. As was pointed out in In re Dutch Maid Ice Cream Company, 95 F.2d 262, 25 C.C.P.A., Patents, 1009; Marion Lambert, Inc. v. O'Connor, 86 F. 2d 980, 24 C.C.P.A., Patents, 781; and Traders Oil Mill Co. v. Lever Brothers Co., 100 F.2d 249, 26 C.C.P.A., Patents, 899, identity of sound has become increasingly important since the advent of radio advertising. In such advertising no distinction would ordinarily be drawn between the two marks here involved.

The goods of the respective parties, mayonnaise and margarine, are foods which are usually sold in the same stores and which are similar in nature. Both are commonly used as ingredients in sandwich spreads. We are of the opinion that the use of closely similar marks, such as "Nu Made" and "Nu-Maid" on mayonnaise and margarine, respectively, might well lead the public to suppose that the merchandise emanated from the same source, and thus result in confusion.

■ The record indicates that there has been concurrent use by the parties of their respective marks for a long period, and there is no evidence of actual confusion. However, there is no clear showing as to the extent to which the goods were sold in the same localities. It is well settled that evidence of actual confusion is not necessary to show that likelihood of confusion exists. Norris, Inc. v. Charms Co., 111 F.2d 479, 27 C.C.P.A., Patents, 1174. Under the circumstances of this case, and in view of the close similarity between the marks involved, we are of the opinion that the lack of evidence of actual confusion does not establish that confusion would not be likely to occur from the concurrent use of those marks.

In holding that appellant's failure to object to appellee's use of its trademark "Nu-Maid" was fatal to its right to oppose registration of that mark, the Assistant Commissioner said:

"Since a registration is recognition of the applicant's right to use its mark, and since opposer's assent to applicant's use is clearly apparent from the record, this opposer's acquiescence has created an estoppel against any right it may once have had to prevent applicant's registration from issuing."

732

It is true that a registration on the principal register is recognition of the registrant's right to use its mark, but it is substantially more than that. Section 7(b) of the Trade-Mark Act of 1946 provides that a certificate of registration on the principal register "shall be *prima facie* evidence of the validity of the registration, registrant's ownership of the mark, and of registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the certificate, subject to any conditions and limitations stated therein." The distinction between the right to use a trademark and the statutory right to register it has been repeatedly recognized by this court. Alumatone Corp. v. Vita-Var Corp., 183 F.2d 612, 37 C.C.P.A., Patents, 1151; Willson v. Graphol Products Co., Inc., 188 F.2d 498, 38 C.C.P.A., Patents, 1030, and cases there cited.

Assuming, as was found by the Assistant Commissioner, but without holding here, that appellant must be presumed to have known of appellee's use of the mark for a substantial period of time before taking any action with respect to it, such conduct at most could involve acquiescence only with respect to appellee's right to use the mark. Appellant was clearly under no duty to attack appellee's right to use the mark if it did not choose to do so, on penalty of being deprived of the right to oppose an application to register. It could not take the latter action, of course, until after appellee applied for registration and the application was published for the purpose of opposition.

It is to be noted that appellee did not seek to register the mark challenged here until almost twelve years after the alleged date of first use. Under such circumstances the following statement by the Patent Office Examiner-in-Chief in Locatelli, Inc. v. Lucatelli Packing Co., 97 U.S.P.Q. 305, is in point:

"* * * since the opposer could take no action as to the applicant's right to register the mark until after applicant had applied for registration and after the publication

thereof, as provided by Section 13 of the Trade Mark Act of 1946 (and similar provisions in the prior act) the defenses of laches and acquiescence are deemed not to be applicable herein. Applicant waited over twenty years in seeking a Federal trade mark registration and can hardly be heard to complain that the opposer waited an equal period to object to such a trade mark registration."

While the time here involved is somewhat shorter than that described in the quoted excerpt, we consider the principle stated in the quotation to be applicable in the instant case. Appellant cannot properly be charged with acquiescence in appellee's right to registration until appellant became aware that such a right had been asserted by appellee. Estoppel by reason of acquiescence and laches on the part of the owner of a trademark is applied against him by this court, either in an opposition or cancelation proceeding, depending on the explicit terms of the statute and from the facts established by the record in the case. See Willson v. Graphol Products, Inc., supra; Schnur & Cohan, Inc. v. Academy of Motion Picture Arts, etc., 223 F.2d 478, 42 C.C.P.A., Patents, 963; West Disinfecting Co. v. Owen, 165 F.2d 450, 35 C.C.P.A., Patents, 843; Malone v. Procter & Gamble Co., 65 F.2d 154, 20 C.C.P.A., Patents, 1150; Heger Products Co. v. Polk Miller Products Corp., 47 F.2d 966, 18 C.C.P.A., Patents, 1106, and authorities therein cited. It is entirely possible that appellant might have had no objection to appellee's use of the words "Nu-Maid," in combination with a picture, but might have objected strongly, as it has done here, to appellee's claim to ownership and exclusive right to use those words standing alone as a trademark for related goods.

For the reasons given we are of the opinion that appellant was not estopped to contest appellee's right to register its mark here involved and that the applicant's mark is confusingly similar to appellant's mark "Nu Made." The de-

cision of the Assistant Commissioner is accordingly reversed.

Reversed.

JACKSON, J., retired, recalled to participate herein in place of COLE, J., absent because of illness.