59 CCPA

**JAMES BURROUGH LIMITED,**
Appellant,

v.

**Robert E. LaJOIE and John F. Joliat,**
Appellees.

**Patent Appeal No. 8680.**

United States Court of Customs
and Patent Appeals.

July 13, 1972.

G. Cabell Busick, Washington, D. C. (Mason, Fenwick & Lawrence), Washington, D. C., attorneys of record, for appellant; Lauterstein & Lauterstein, New York City, of counsel.

L. Gaylord Hulbert, Detroit, Mich. (Whittemore, Hulbert & Belknap), Detroit, Mich., attorneys of record, for appellees; Joseph A. DeGrandi, Washington, D. C. (Browne, Beveridge & DeGrandi), Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges and MALETZ, Judge, United

States Customs Court, sitting by designation.

LANE, Judge.

This is an appeal from the decision of the Trademark Trial and Appeal Board, reported in full at 162 USPQ 269 (1969), dismissing appellant's opposition to registration of SIGN OF THE BEEFEATER[1] for "restaurant services." Opposer is the owner of the prior registration of BEEFEATER[2] for "gin." The opposition is based on the ground that SIGN OF THE BEEFEATER so resembles BEEFEATER as to be likely, when applied to restaurant services, to cause confusion or to cause mistake or to deceive. The TTAB dismissed the opposition concluding that appellant was estopped by reason of laches and acquiescence from asserting a likelihood of confusion or that it would be damaged by the registration sought by applicants. Applicants denied appellant's allegations relative to likelihood of confusion, but the TTAB did not reach this issue. We reverse the dismissal of the opposition and remand the proceeding to the TTAB for its determination of the likelihood of confusion issue.

The record in this case shows that applicants adopted the mark, SIGN OF THE BEEFEATER, for restaurant services in 1957. Their restaurant business opened in a suburb of Detroit, Michigan, with a cafeteria featuring steamship round of beef and not serving gin or any alcoholic beverages. The business was there listed in the telephone directory in 1957 under SIGN OF THE BEEFEATER and under BEEFEATER RESTAURANT. Applicants' display advertising coupled the words SIGN OF THE BEEFEATER with a pictorial representation of a fat hungry man wearing a three-cornered hat, holding a knife and fork in his hands, and having a bib around his neck. The representation of the fat hungry man was completely different from the picturesque representation of an English Tower of London guard commonly used by appellant in its advertising of BEEFEATER gin.[3]

On October 6, 1959, opposer sent a letter to the applicants requesting them to desist from using the term BEEFEATER for their restaurant. On the advice of their attorney, applicants ignored said letter. On October 30, 1959, opposer sent another letter to the applicants referring to the first letter and requesting a reply. Applicants did not respond. An envelope postmarked May 25, 1960, bearing the firm name of opposer's counsel and admittedly containing a letter was refused acceptance by the applicants, again on the advice of counsel. A personal call was made at applicants' restaurant by a representative of Kobrand Corporation, opposer's distributor in the United States, but the record is not clear as to the actual time or the purpose of this visit. Apparently the caller learned at that time that applicants' restaurant made no provisions for handling alcoholic beverages and that it closed at 9:00 o'clock at night. At any rate, opposer took no action with respect to applicants' use of SIGN OF THE BEEFEATER from May, 1960, until June, 1967.

Applicants testified that they knew of appellant's trademark BEEFEATER for gin a number of years before they opened their own restaurant business in 1957. As noted above, appellant had a 1933 registration of the BEEFEATER symbol for gin, and its 1959 registration of the word BEEFEATER for gin alleges first use in commerce in 1933. Since 1959 the applicants have enjoyed substantial success in their SIGN OF

---

1. Application Serial No. 238,751, filed February 14, 1966.

2. Reg. No. 678,608, registered May 12, 1959. Opposer also has Reg. No. 308,053, issued November 21, 1933, under the 1905 Trademark Act, for the familiar Tower of London guard symbol for BEEFEATER gin.

3. See footnote 2 supra.

THE BEEFEATER restaurants and have expanded to at least six establishments. They have adhered to a no-liquor policy, and in their advertisements have made note of that policy.

The board found that the opposer acquiesced in the applicants' use of their mark in view of their no-liquor policy, that applicants were justified in assuming that the opposer had so acquiesced, that the applicants expanded their business under the SIGN OF THE BEEFEATER name in reliance on opposer's acquiescence, and that the applicants continued to adhere to, and advertise, their no-liquor policy in the reasonable belief that it was on that basis that the opposer had abandoned its efforts to have the applicants cease the use of BEEFEATER as a part of their trademark. Against these findings, the board concluded that § 19 of the Lanham Act, 15 U.S.C. § 1069, which provides in part that "[i]n all inter partes proceedings equitable principles of laches, estoppel, and acquiescence, where applicable may be considered and applied," is apposite in this case. The board accordingly held the opposer to be estopped by virtue of its prior conduct from asserting that registration of SIGN OF THE BEEFEATER to these applicants would be likely to cause confusion, mistake or to deceive.

## OPINION

■ We have no difficulty concluding that the board erred in sustaining the applicants' equitable defense in this case. In Salem Commodities, Inc. v. Miami Margarine Co., 244 F.2d 729, 44 CCPA 932 (1957), the appellee, applicant for trademark registration, urged that appellant, the opposer, was estopped to oppose because the applicant's use of the mark was known to opposer for a long period of time before any action was taken to stop that use. The board agreed that the applicant had a good § 19 defense to the opposition. While this court proceeded on the assumption that appellant's factual assertions were true, it nevertheless reversed the board's decision and held that:

> Appellant was clearly under no duty to attack appellee's right to *use* the mark if it did not choose to do so, on penalty of being deprived of the right to oppose an application to register. It could not take the latter action, of course, until after appellee applied for registration and the application was published for the purpose of opposition.
>
> \* \* \* \* \* \*
>
> \* \* \* Appellant cannot properly be charged with acquiescence in appellee's right to *registration* until appellant became aware that such a right had been asserted by appellee. [Emphasis added.][4]

■ The court in *Salem* recognized a distinction between the right to use a mark and the statutory right to register which is of significance when § 19 is sought to be relied upon in defense to an opposition. Thus, under § 7(b) of the Lanham Act, 15 U.S.C. § 1057(b), registration is more than evidence of the right to use. It is prima facie evidence "of the validity of the registration, registrant's ownership of the mark, and of registrant's *exclusive* right to use the mark in commerce *in connection with the goods or services specified in the certificate,* subject to any conditions and limitations stated therein." (Emphasis added.) Moreover, in the present case, appellant may have acquiesced only in the use of the words SIGN OF THE BEEFEATER in conjunction with a picture to identify a restaurant in which no liquor is served and which closes relatively early in the evening whereas registration is sought on the words alone for "restaurant services" broadly. Applicants' equitable standing in an action by this opposer to enjoin their actual use of SIGN OF THE BEEFEATER, if ever brought, would be one matter. However, in this opposition, which is aimed

4. 244 F.2d at 732, 44 CCPA at 936.

only at preventing registration of the specified mark, a broader and somewhat different goal than enjoining the actual use of the mark, and which is timely brought only after the applicants seek registration, the applicants have not established this opposer's acquiescence in this registration. We conclude that on the facts of this case, the opposer is not estopped to maintain this opposition.

Having held that the opposer was estopped to maintain this action, the board found it unnecessary to reach the merits of the likelihood of confusion issue. We therefore do not have the benefit of its views in this regard, and we remand to allow the board to make a fully focused inquiry into this question. Myers v. Feigelman, 455 F.2d 596, 59 CCPA (1972).

The decision of the board dismissing the opposition is *reversed,* and the case is *remanded* for consideration of the likelihood of confusion issue on the merits.

Reversed and remanded.