48 CCPA
**ALFRED DUNHILL OF LONDON, INC.,**
Appellant,

v.

**DUNHILL TAILORED CLOTHES, INC.,**
Appellee.
Patent Appeal No. 6697.

United States Court of Customs
and Patent Appeals.
Aug. 16, 1961.

Watson, Leavenworth, Kelton & Taggart, New York City (Leslie D. Taggart, New York City, of counsel), for appellant.

Kaye, Scholer, Fierman, Hays & Handler, New York City (Sidney A. Diamond, New York City, of counsel), for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.*

RICH, Judge.

Alfred Dunhill of London, Inc., opposer, here appeals from the decision of the Trademark Trial and Appeal Board, 124 USPQ 343, dismissing its opposition to registration of DUNHILL TAILORS on the Principal Register as a trademark for men's suits and overcoats.

This opposition is unusual in that behind it lies an infringement suit brought by opposer against applicant, in which applicant counterclaimed for affirmative relief of various kinds. This suit, in the United States District Court for the Southern District of New York, is Alfred Dunhill of London, Inc. v. Dunhill Tailored Clothes, Inc., 119 USPQ 325. It was decided September 22, 1958, by the entry of a final judgment from which no appeal was taken. It is hereinafter referred to as the "suit."

On the basis of the decision in that suit, the applicant filed a motion to dismiss the notice of opposition on the ground that it failed to state a claim on which relief could be granted or, in the alternative, for summary judgment in favor of applicant. Opposer thereafter filed a cross-motion for summary judgment sustaining the opposition and requested an oral hearing.

The board denied oral hearing, denied opposer's motion for summary judgment, granted "Applicant's motion" and dismissed the opposition. Opposer speculates that it was applicant's motion for summary judgment, rather than to dismiss the opposition, that was granted but since the board did, *in haec verba*, dismiss the opposition, the distinction is of no importance. The parties agree that there is no genuine issue as to any material fact.

This case involves the single question of law whether, under the Lanham Act (Trademark Act of 1946, 15 U.S.C. § 1051 et seq., 15 U.S.C.A. § 1051 et seq.), applicant is entitled to registration on the basis of the rights of the parties hereto as settled in the suit.

Applicant, Dunhill Tailored Clothes, Inc., filed its application to register, Ser. No. 25,527, on March 5, 1957, claiming use since September 3, 1923. The application as filed asserted reliance on section 2(f) and alleged "substantially exclusive and continuous use in interstate commerce for the five years next preceding the date of filing of this application." The mark sought to be registered in the application as filed was DUNHILL and the specimen was a woven clothing label bearing DUNHILL, beneath the "hill" portion of which in relatively smaller letters was the word "Tailors" and under it "New York."

On April 18, 1957, opposer brought the suit referred to above against the applicant and on August 16, 1957, the examiner deferred action on the application pending outcome of the suit,[1] in which

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28, United States Code.

1. It appears to be the usual practice to stay registration proceedings pending the outcome of court actions between the same parties involving related issues. A. E. Staley Mfg. Co. v. Staley Milling Co., 99 USPQ 175 (Com'r.), Townley

final judgment was rendered September 22, 1958. November 18, 1958, the examiner refused registration because in the suit the applicant had been enjoined. Applicant responded on January 23, 1959, amending the drawing "by adding the word 'TAILORS' after the name DUNHILL," pointing out that the injunction provided that it might use the mark DUNHILL TAILORS on certain named products for men including "clothing," and submitting new specimens of that mark. The application was passed for publication June 29, published July 21 (744 O.G. TM 109), and this opposition was filed August 18, 1959. Then followed the motions and the decision of the board dismissing the opposition on February 17, 1960.

No facts have been developed in the opposition except as they appear from the pleadings, applicant's motion in effect admitting the allegations of the notice of opposition. But in addition thereto we have before us the published opinion of the District Court for the Southern District of New York (following an unpublished oral opinion on June 11, 1958) which consists of Findings of Fact and Conclusions of Law (119 USPQ 325). Both parties argue this case on the basis of acceptance of those findings and conclusions and the final judgment in the suit, which judgment is the fact of paramount importance on the issue before us.

Reference is made to the reported findings of fact in the suit for a more complete statement, the important facts relevant here being summarized below.

Opposer, Alfred Dunhill of London, Inc., is a Delaware corporation with offices in New York City. It was incorporated under its present name June 1, 1921 and began business as exclusive distributor in the United States of "DUNHILL" products procured from Alfred Dunhill of London, England, who was succeeded in business by Alfred Dunhill Ltd., a corporation of Great Britain. Since May 15, 1922 opposer has operated a ground floor retail store in New York, in which "DUNHILL" products are sold, its present store being on Fifth Avenue at 50th Street. The goods sold under the "DUNHILL" trademark or trade name in 1922 and since included tobacco products, smoker's articles, miscellaneous men's jewelry, flat leather goods, canes, umbrellas, golf balls, razors, clocks, desk sets, playing cards, bridge sets, mahjong sets, silver tea sets, tea caddies, bar fixtures and accessories, luggage, brief cases, travel cases, toilet cases, and other gift items.

Opposer either owns or is a licensee under many trademark registrations of or including the name DUNHILL granted to it or to Alfred Dunhill Ltd., seventeen being listed in the notice, for tobacco products, lighters, razors, clocks and watches, pipes, cigar and cigarette holders, cosmetics, soaps and shaving creams, tobacco pouches, billfolds, purses, handbags, document cases, and wallets. One registration, No. 634,071, Sept. 4, 1956, claiming first use in 1929, is for "ALFRED dunhill" as a trademark for men's ties. It is the only registration of opposer or its licensor in the clothing field.[2]

"DUNHILL" had a special significance, meaning opposer and its products, before applicant made any use of the mark and prior to the incorporation of applicant and has such significance at the present time.

Applicant was incorporated under its present name, under the laws of New

Clothes, Inc. v. Goldring, Inc., 100 USPQ 57 (Com'r.), Squirrel Brand Co., v. Bernard Nut Co., Inc., 101 USPQ 340 (Com'r.), "Developments in the Law—Trade-Marks and Unfair Competition," 68 Harv.L.Rev. 814, 843.

2. This registration, along with the other 16, is listed in the final judgment in the suit but before signing it Judge Dimock,

the trial judge, struck it out of the list of which the judgment said: "The following United States trademark registrations are good, valid and outstanding:" He thus refused to hold it to be a valid registration but neither did he hold it invalid. For our purposes we presume it to be valid. The registrations are all identified in the board's opinion, 124 USPQ 343, and in the suit, 119 USPQ 325.

York, on August 13, 1923, by one William Block and no one by the name of Dunhill has ever had any connection with applicant or the Block family. From 1923 to 1955 applicant occupied upper floor places of business at 230 Fifth Avenue, 39 West 32nd Street, and 1 West 52nd Street in New York. Since then and at present it occupies a ground floor store at 65 East 57th Street.[3]

From 1923 to November, 1955 applicant was primarily in the clothing business but incidentally sold many items of haberdashery, men's jewelry and the like, closely similar in kind to the sort of goods opposer was selling. In November, 1955 it moved to the 57th Street store and there used, as it had earlier, the name "DUNHILL" in referring to its various products and also used it in the term "DUNHILL TAILORS", wherein the word "Tailors" was subordinated. Finding of Fact 29 in the suit reads:

"29. Defendant used the word 'DUNHILL' in its business at 65 East 57th Street with the purpose, intent and result that a substantial number of members of the purchasing public were confused, mistaken or deceived into the belief that defendant and its products were plaintiff and its products or that defendant was a part of or connected with plaintiff."

The district court concluded that applicant had infringed opposer's trademark and trade name rights, competed unfairly, and should be enjoined.

But there is another side to the story. The injunction which opposer obtained is, realistically, as much a decree protecting certain rights of applicant, which the court found to exist, as it is a victory for opposer. The equity court found rights

in both parties to the suit and undertook to protect them both.

Findings of Fact 30 through 38 in the suit relate to events which occurred during the years 1930–1956, a twenty-six year period, giving rise to an estoppel against opposer based on acquiescence. We shall not repeat them as they are succinctly summarized in Conclusion of Law 13, which was the basis of the judgment which both enjoins applicant and protects applicant in certain continuing rights to use "DUNHILL," the judgment being of record in the file of the application here on appeal. The court concluded:

"13. In view of what has almost been cooperation between plaintiff [opposer] and defendant [applicant] in the latter's use of 'DUNHILL', plaintiff's long knowledge of defendant's use of its corporate and trade name, the close and friendly contact between representatives of plaintiff and defendant, and the facts that a Schulte [Arthur D. Schulte, whose family had an interest in applicant] who was a director of plaintiff was simultaneously a customer of defendant and that the Schultes were defendant's landlord at one time, that plaintiff's president was for seven years a clothing customer of defendant and also bought two ties from defendant and is presumed to have seen haberdashery on display at defendant's place of business, and that plaintiff's president sold 'DUNHILL' jewelry and offered 'DUNHILL' toiletries to defendant for resale, there was an implied assurance by plaintiff to defendant that defendant might continue the sale under the name it was then using, i. e., 'DUNHILL TAILORS', of the following products for men, as such

---

3. We observe, dehors the record, that applicant, as "DUNHILL TAILORS," has a ⅓ page ad, showing this address, on page 60 of The New Yorker for June 3, 1961, and that opposer, as "ALFRED DUNHILL OF LONDON Fifth Avenue at 50th St., New York," and elsewhere, has two ⅛ page ads on pages 78 and 102

of the same issue. The former is for slacks and sports jackets and the latter for "Unique Gift[s]" consisting of desk clocks and Italian-made reproduction antique globes. This has not influenced our opinion. We set it forth merely as a matter of interest.

products are defined and set forth in the findings of fact: clothing, jewelry, toiletries, haberdashery, flat leather goods, luggage and silent valets; provided, however, that whenever defendant so makes any use of 'DUNHILL TAILORS', the word 'Tailors' shall always be horizontally juxtaposed to 'Dunhill' and shall always be in the same form, font, style, size, color, and as prominent as 'Dunhill', and provided further that defendant shall not use 'DUNHILL TAILORS' in lower case."

The judgment of injunction conforms to the above conclusion 13. As to the last proviso, six of opposer's registrations depict the mark "DUNHILL" in a special type style which is all lower case with the tops of the letters "d", "h", and "l" greatly elongated. Applicant has been precluded from using that style, which appears to be opposer's current usage.

■ There is a further fact of minor importance which fits into the picture shown by the foregoing conclusion of law. It is thus recited in finding 20:

"20. Defendant [applicant] applied to the United States Patent Office for the registration of 'DUNHILL' as a trademark for men's suits and overcoats on October 16, 1923 under the Trademark Act of 1920, and registration was issued under the said Act by the Patent Office on October 21, 1924, Registration No. 190,787, which registration expired on January 5, 1947."

We take notice that expiration was pursuant to section 46(b) of the Lanham Act, 15 U.S.C.A. § 1051 note and also that an application to register under the Act of March 19, 1920 was not subject to opposition, Fitzpatrick Brothers v. B. Heller & Co., 1925 C.D. 149, though subject to cancellation, Act of March 19, 1920, ch. 104, Sec. 2, 41 Stat. 534.

One final *fact* we note, sua sponte, is this: Notwithstanding the provision in section 37 of the Lanham Act giving the court in an action, such as the suit in New York, the power to "determine the right to registration" and notwithstanding the pendency of the application at bar during the suit, no determination was made in that suit of applicant's right to register DUNHILL TAILORS, or any other mark. Nothing brought to our attention would indicate that any effort was made to secure such a determination. The closest approach to utilization of section 37 was that defendant's [applicant's] counterclaim asked cancellation of opposer's Registration No. 634,671 for men's ties; but the court did not act on the request otherwise than to dismiss the entire counterclaim and to refuse to retain that registration in the list of those adjudicated valid.

■■ Applicant correctly states that right to use, which was determined in the suit, and right to register, which was not, are "different 'causes of action' " and contends that nevertheless the holding of acquiescence in its rights to the mark in connection with men's clothing is res judicata in this proceeding. While issues actually litigated in another proceeding between the same parties would, as applicant contends, be res judicata in a subsequent proceeding between the same parties, it seems to us that the admission that applicant's right to a registration was a different "cause of action" and was not litigated disposes of that contention. We appreciate, of course, that the right to *use*, to the extent set forth in conclusion 13, is settled. We are left to decide the statutory right to *register*, however, on the basis of that established right to use. Taking that right into consideration, our problem is whether DUNHILL TAILORS can be registered to applicant under the Lanham Act in the face of opposer's opposition, opposer's rights to "DUNHILL" in various forms as evidenced by the registrations found valid by the court in the suit, its rights as adjudicated in the suit to restrict applicant's use, the court's findings with respect to confusion, mistake, and deception of the purchasing public, *but taking into account also the applicant's rights as preserved in the judgment.*

The board, in dismissing the opposition, did so on the ground that the court's finding in the suit of applicant's right to use "precludes a finding of damage to opposer from the registration." It also found to be *implicit* in the decision of the district court *a holding*, with which it agreed, *that confusion*, in the sense of section 2(d) of the Lanham Act, *would be unlikely to result from applicant's use of DUNHILL TAILORS on men's suits and overcoats concurrently with opposer's use of DUNHILL for the goods enumerated in its registrations*. It is unclear which ground the board's decision rests on; but clearly it rests on the decision of the district court, whether it be no likelihood of confusion or no possibility of damage, which come to much the same thing.

However one may choose to describe the situation in legal terms, the cardinal fact is that applicant, by judicial decree, as against opposer, has the right to use DUNHILL TAILORS, the mark sought to be registered, as provided in the following paragraphs of the judgment in the suit:

"That defendant may use the words 'DUNHILL TAILORS' on or in connection with the advertising, offering for sale and sale, including use in its corporate title, of the following products for men, as such products are defined in the Findings of Fact filed herein, namely, clothing, jewelry, toiletries, haberdashery, flat leather goods, luggage and silent valets;

"Provided, however, that when defendant so makes any use of 'DUNHILL TAILORS', the word 'Tailors' shall always be horizontally juxtaposed to 'Dunhill' and shall always be in the same form, font, style, size and color and as prominent as 'Dunhill', and provided further that defendant shall not use 'DUNHILL TAILORS' in lower case type."

This right to continue to use DUNHILL TAILORS is the result of opposer's knowledge and long acquiescence which gave rise to an equitable estoppel. It is not, however, an unconditional right to use. It is indeed, explicitly restricted. In addition to the limitations of the above proviso, applicant is subject to a permanent injunction (provision "6" of the judgment), to which the paragraphs just quoted are an "exception," enjoining applicant

" * * * from using 'DUNHILL' either alone or in any combination with other words or symbols in its corporate name, as a trademark, or on or in connection with the advertising, promotion, packaging, labelling, offering for sale or sale of any products whatsoever, or in any other manner whatsoever, with the following exception:".

What is not within the above quoted exception is within the prohibitions of this paragraph, framed to protect opposer's rights to "DUNHILL," as the exception is framed to protect applicant's rights.

Though is has not been so designated, it is apparent that what we have before us, at least with respect to right to use, is a court-approved concurrent use situation. Two corporations which have each been using "DUNHILL" for over a quarter century may, by judicial decree, both legally *use* "DUNHILL," applicant being subject to certain restrictions imposed for the protection of opposer, and opposer, correspondingly, restrained from interfering with applicant.

■■ The Lanham Act, section 2(d), contemplates that where two parties have the legal right to use "the same or similar marks" there may be corresponding concurrent registrations. But each of the several provisions of that section providing for concurrent registrations contains reference to

"*conditions and limitations* as to *the mode* or place of use or the goods in connection with which such registrations may be granted *which conditions and limitations shall be prescribed in the grant* of the concurrent registrations * * *." (Emphasis ours.)

The "conditions and limitations" are such as would assure, *if* they were in fact restrictions on *use*,[4] that, in the words of section 2(d), "confusion or mistake or deceit of purchasers is not likely to result from the continued use of" the marks concurrently registered.

The second clause of the concurrent registration proviso in section 2(d) reads:

"and concurrent registrations may be similarly granted by the Commissioner *with such limitations and conditions when a court has finally determined that more than one person is entitled to use the same or similar marks in commerce.*"

In the instant case the district court in New York made such a final determination. Knowing that opposer, the plaintiff in that suit, had the right to use "DUNHILL," it determined that applicant, the defendant there, also had a *limited* right to use it. But, apparently because applicant neither invoked the concurrent registration provision nor requested an order to register from the court (as it could have done under section 37), the board, by merely dismissing the opposition, opened the way to registration of DUNHILL TAILORS without any of the "conditions and limitations" in the grant which the statute contemplates in the case of concurrent registrations. It seems to us that such a registration would be contrary to the spirit, if not the letter, of the Lanham Act and would give a false picture of applicant's rights. Opposer would have good cause to complain of such a registration.

■ Applicant argues its right to register on the broad principle that right to register should be conformed to the right to use, citing authorities for the proposition that this was one of the basic objectives of the Lanham Act, as indeed it appears to have been in the eyes of well-informed commentators. Robert, The New Trademark Manual, 55–56, 201 (1947); Robert, Commentary on the Lanham Trade-Mark Act, 15 U.S.C.A. following § 1024, at pages 271–272, 277–278 (1948),[5] the annual report of Derenberg on The Third Year of Administration of the Lanham Trademark Act of 1946, Patent Trademark and Copyright Weekly Reports, Vol. 86, No. 10, Part II, page 19, 40 T.M.Rep. 914, 940 (1950);[6] Vandenberg, Concurrent Registration of Trademarks, 29 JPOS 720, 725 (1947), and authorities there cited. Applicant, however, does not appear to have made any effort to "conform" the registration it seeks with the right to use which it actually possesses, as defined in the district court judgment, by incorporating in the registration the limitation and conditions to which its right to use is subject. Under the circumstances of this case, we feel that this is a necessary

4. It should be apparent that restrictions and conditions in a registration are not, under our common law principles of trademark law, restrictions and conditions on the *use* of the mark by the registrant. So far as the Lanham Act is concerned, the registrant is free to do as he pleases in *using* his mark. This follows logically from the fact that he does not derive his right to use from the registration. At most, conditions in a registration affect or limit only those rights derived from registration. Right to use is not one of them, nor right to use in any particular way, or place, or on any particular goods.

5. This commentary, p. 278, speaking of the power given to courts to rectify the register, says: "This is a radical departure from prior law, but the provision will further the desire to have the registers reflect the *true status* of all marks *in use.*" (Emphasis ours.)

6. Derenberg, prefacing a discussion of application of equitable remedies under section 19 in inter partes proceedings, said: " * * * it was one of the avowed purposes of the Act of 1946 to eliminate as much as possible the former distinction between 'the right to use' and 'the right to register'." Compare "The Circular Trend in Trademarks" by Daphne Robert Leeds, author of the above Manual and Commentary, 47 A.B.A.Jour. 256, March 1961, p. 258, " * * * the statutory law [1946 Act] * * * had as one of its purposes the elimination of the distinction between the right to register and the right to use * * *."

prerequisite to the granting of the registration.

Opposer's arguments for reversal will now be considered. Its primary argument is that only an "owner" of a trademark is permitted by statute to register and that applicant is not an "owner." It is contended that the district court adjudged opposer to be the owner of "DUNHILL" and applicant to be an infringer when it used that mark in "DUNHILL TAILORS," wherefore applicant cannot be an owner of the latter mark. For the proposition that use of "DUNHILL TAILORS" was held to be an infringement, opposer cites Finding of Fact 28 which contains no such holding. Nor can we find such a holding elsewhere as to "DUNHILL TAILORS" with both words equally prominent. Moreover, it is inconceivable that the court could have entertained such a thought while adjudicating that applicant was free to use that mark. At most, the court found unfair competition and/or infringement where, as stated in finding 26, " 'Tailors' was less prominent than 'Dunhill' and where 'Tailors' was inconspicuous," but obviously not where the form of the mark corresponded to the terms of the judgment quoted above. This brings the question down to this: can applicant own "DUNHILL TAILORS" as a trademark for men's suits and overcoats while opposer owns "DUNHILL," alone and in various other combinations, for other goods? We see no reason why not.

■ Opposer seems to regard it as an impossibility that two parties can own and register the same trademark. Not only is that a commonplace where there is a sufficient difference in goods, even as to identical marks, Rohm & Haas Company v. The C. P. Hall Company, 91 US PQ 69, 72 (Exr. in Ch.), but the concurrent registration provisions of section 2(d) contemplate it even in the case of the same or similar goods. In the instant case we have some difference in both goods and marks but nevertheless a close question requiring the inhibitions of the injunction to minimize confusion.

The principles of ownership, however, are not changed by this fact.

■■ As property rights subject to "ownership" trademarks are sui generis. Since ownership grows out of and depends upon the continuance of use and the parties here have long used their respective marks, their rights having been carefully determined by the district court, we think that within its legitimate field of use applicant is as much an "owner" as is opposer.

■ Opposer contends that the amendment of the application was an admission that DUNHILL TAILORS is in legal effect the same as "DUNHILL." The amendment merely conformed the form of the mark to the rights established by the judgment. The Patent Office made no objection to it. The district court clearly felt they were not the same. We see no merit in this argument.

Opposer attempts to show how it would be damaged by the granting of the registration in any event. The gist of the argument is that applicant would obtain the various advantages of registration which the Lanham Act affords, viz.: a finding and evidence of "ownership," the right to use the mark, to mark it with notice of registration, constructive notice and eventual incontestability. We see no reason why applicant should not enjoy these advantages with respect to the limited rights it already enjoys in the use of the mark under the judgment. Opposer has failed to show us how it would be any worse off as a result of registration than it is now under the terms of the judgment, *provided the registration is restricted to conform to the judgment.* Such a registration will do no more than aid applicant in the enforcement of substantive rights it already has.

The next point of opposer is, in effect, that right to register does not necessarily follow right to use. Of course we agree. Salem Commodities, Inc. v. Miami Margarine Co., 244 F.2d 729, 44 CCPA 932; DeWalt, Inc. v. Magna Power Tool Corp., 289 F.2d 656, 48 CCPA 909. Applicant

admits the validity of this point but says in reply that section 19 of the Lanham Act provides that

> "In all inter partes proceedings equitable principles of laches, estoppel, and acquiescence, where applicable may be considered and applied."

Applicant argues that this section "clearly applies to this proceeding" and that the "very purpose of Section 19 was to conform the right to register to the right to use as determined by judicial decree," but at the same time says "We need not be concerned here with the question whether laches is available in an opposition proceeding; the judgment of the District Court is based upon acquiescence and estoppel." Applicant's position is not too clear.

We do not see where *we* have any occasion to apply equitable principles or section 19 in this case. The applicable equitable principles were all applied in the district court in New York where the facts to support their application were proved. Opposer was there held to be estopped to interfere with applicant's use within the terms of the judgment. In this opposition applicant is relying on a judicially established right, not on estoppel. If the facts underlying the estoppel had been proved in the opposition, instead of in the New York court, then we

might have occasion to rely on section 19 and to apply equitable principles, but such is not the case.

 We are clearly of the view on the record before us that the applicable statutory law, which neither party has invoked but which we should nevertheless apply, Coschocton Glove Co. v. Buckeye Glove Co., 90 F.2d 660, 664, 24 CCPA 1338, 1343, is that provision of section 2(d) which provides for concurrent registration "when a court has finally determined that more than one person is entitled to use the same or similar marks in commerce." That is the situation here and it is the determination of the district court in the suit between these parties which is controlling, no question as to the registrability of DUNHILL TAILORS apart from opposer's possibly adverse rights having been raised. Equally applicable, however, are the provisions of section 2(d) with respect to incorporating in the registration certificate the "conditions and limitations as to the mode or place of use or the goods." These "shall be prescribed in the grant." [7]

We believe the board erred in approving, in effect, the granting of an unrestricted registration by dismissing the opposition.[8] We also believe that opposer is not entitled to prevent the grant

7. For a Commissioner's decision holding that the clause of section 2(d) we find to be applicable to this case is not limited by the provision of the first clause of the proviso respecting use of the mark "prior to any of the filing dates of the applications involved," see Ex parte Crown Beverage Corp., 102 USPQ 312, 45 T.M.R. (Part II) 69. We agree with that holding.

8. In formally declared concurrent user proceedings it is the board which decides "the respective rights of registration." Section 17 (15 U.S.C. § 1067, 15 U.S.C.A. § 1067, as amended Aug. 8, 1958). We do not see that it is of any practical significance that the present inter partes proceeding is called an "opposition" when the facts are such as to require a decision on an issue of concurrent registration.

We have before us, as did the Patent Office, both of the interested parties, the finally adjudicated facts on which they ask to have their rights determined, the Commissioner has already decided to grant a registration, which in our opinion would be "concurrent" whether so named or not, and that proposed registration has already been published in the Official Gazette of the Patent Office, all as contemplated in section 2(d).

Section 18 (15 U.S.C. § 1068, 15 U.S.C.A. § 1068) provides that in "such proceedings," which is a reference back to section 17 (15 U.S.C. § 1067, 15 U.S.C.A. § 1067) and includes oppositions, such as we have here, the Commissioner may

" * * * register the mark or marks for the person or persons entitled thereto, as the rights of the parties

to applicant of a registration on the mark described and for the goods named in its amended application, *provided* the registration contains, as contemplated by section 2(d) in such cases, conditions and limitations corresponding to those contained in that portion of the judgment entered Sept. 22, 1958 in the United States District Court for the Southern District of New York, in Civil Action No. 119–295, constituting the injunction and designated "6," which is of record in the application file.

Since the opposition was dismissed by the board without any such requirement, its decision must be *reversed*.

Reversed.

WORLEY, Chief Judge (concurring).

I agree that the board should be reversed but for different reasons than those advanced by the majority.

First, I fail to see how the district court action can be given the controlling weight accorded it by the majority. The jurisdiction, the facts, and the issues there were wholly different from those here. There the basic issue was the right to *use*; here it is the right to *register*. That there are substantial differences between the two in fact as well as in law is too well established to require citation of authorities.

Second, I agree with the majority that "DUNHILL" had, and has, a "special significance." Indeed, it is so significant that there is no doubt in my mind that the average purchaser would associate "DUNHILL" and "DUNHILL TAILORS" to a degree prohibited by the provisions of Section 2(d) [1] of the Lanham Act. Surely it cannot be said that such confusion would *not* be *likely*.

It is interesting to note that no application for concurrent registration has been filed, considered by the Patent Office, raised by the parties, or set forth in the reasons of appeal to this court.

MARTIN, Judge (concurring).

I agree that the decision of the board should be reversed but on a different basis than that of the majority. The district court in its findings of fact found *inter alia*:

"27. Defendant's purpose in using the word 'DUNHILL' in connection with its business at its store at 65 East 57th Street was with the intent and for the purpose of trading upon plaintiff's reputation and goodwill.

"28. A substantial number of members of the public were confused, mistaken or deceived by defendant's use in its business of the word 'DUNHILL,' *whether alone or with other language*, into the belief that defendant was plaintiff, or that defendant was a branch of or connected with plaintiff and that defendant's goods were plaintiff's goods.

"29. Defendant used the word 'DUNHILL' in its business at 65 East 57th Street with the purpose,

---

hereunder may be established in the proceedings: *Provided,* That in the case of * * * any mark based on concurrent use, the Commissioner shall determine and fix the conditions and limitations provided for in subsection (d) of section 2 of this Act.

Any registration granted to applicant-appellant will clearly be based on concurrent use, and section 18 gives the Commissioner authority—indeed makes a requirement—to determine, fix, and (under 2(d)) prescribe in the grant, the conditions and limitations under which the applicant has, by court decree, the right to use.

1. Sec. 2. Trademarks registrable on the principal register

"No trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

* * * *

"(d) Consists of or comprises a mark which so resembles a mark registered in the Patent Office or a mark or trade name previously registered in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion or mistake or to deceive purchasers: * * * *"

intent and result that a substantial number of members of the purchasing public were confused, mistaken or deceived into the belief that defendant and its products were plaintiff and its products or that defendant was a part of or connected with plaintiff." (Emphasis mine.)

and in its conclusions of law *inter alia* stated:

"10. The pleadings of each of the parties in this civil action respectively claim that there is likelihood of confusion, mistake and deception of the public by the use of 'DUNHILL' by the other party; and since plaintiff has proven that members of the public have in fact been confused, mistaken and deceived by defendant's use of 'DUNHILL' into the belief that defendant and its products are plaintiff and its products and that defendant is connected with plaintiff, defendant is guilty of trademark and trade name infringement and unfair competition with plaintiff."

In view of these findings of fact and this conclusion of law *and my own conviction* that applicant's use of "DUNHILL TAILORS" on its goods is likely to result in purchaser confusion, there is a serious question whether applicant is entitled to registration under the Lanham Act. Section 2 of that Act provides:

"No trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

\* \* \* \* \* \*

"(d) Consists of or comprises a mark which so resembles a mark registered in the Patent Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion \* \* \* or to deceive purchasers: *Provided,* That the Commissioner may register as concurrent registrations the same or similar marks to more than one registrant when they have become entitled to use such marks as a result of their concurrent lawful use thereof in commerce prior to any of the filing dates of the applications involved and *the Commissioner or a court on appeal determines that confusion or mistake or deceit of purchasers is not likely to result from the continued use of said marks under conditions and limitations as to the mode or place of use or the goods in connection with which such registrations may be granted* which conditions and limitations shall be prescribed in the grant of the concurrent registrations thereof; and concurrent registrations may be similarly granted by the Commissioner with such conditions and limitations when a court has finally determined that more than one person is entitled to use the same or similar marks in commerce." \* \* \* (Emphasis mine.)

Although the majority opinion states that the board found that the District Court implied that confusion, mistake or deception of purchasers was unlikely, I find no such implication in the District Court decision. In fact, the plain words of the quoted findings of fact go far beyond the question of "likelihood of confusion, mistake or deception of purchasers" in stating:

"28. A substantial number of members of the public were confused, mistaken or deceived by defendant's use in its business of the word 'DUNHILL,' *whether alone or with other language,* \* \* \*" (Emphasis mine).

There is no finding of fact or conclusion of law which states categorically that the use of "DUNHILL TAILORS" by applicant is *not* likely to cause purchaser confusion which seems to me would have been in order if the court so believed, in view of the findings of fact and conclusions of law which indicate the contrary to be true.

We have before us this question: Does the law authorize the concurrent registration of a trademark which is so similar to another and the goods so related that purchaser confusion is not only likely but, as a matter of fact does exist, on the basis of opposer's long knowledge of and acquiescence in applicant's use of the trademark? I do not think so.

Although this court cannot interfere with the use of this trademark by applicant, we do have the responsibility of determining its registrability under these circumstances. In making this decision it seems to me that we have a problem of deciding in this instance whether the public interest or certain equitable rights of applicant should prevail.

There is no question but that this court has concluded that the public interest is not only involved but must be protected in situations involving purchaser confusion. In Dubonnet Wine Corp. v. Ben-Burk, Inc., 121 F.2d 508, 511, 28 CCPA 1298, this court said:

"Appellee contends that since the registered mark 'Dubonnet' is owned by the opposer but is used by another it cannot be considered as a mark 'owned and in use by another,' under the confusion-in-trade clause of section 5 of the Trade-mark Act of 1905 as amended, * * * so as to bar registration of the mark 'Bourbonet.' We must not lose sight of the fact that the dominant purpose of the said clause is to protect the purchasing public from confusion and mistake. Sun-Maid Raisin Growers of California v. American Grocer Co., 40 F.2d 116, 17 C.C.P.A., Patents, 1034; California Packing Corp. v. Tillman & Bendel, Inc., 40 F.2d 108, 17 C.C.P.A., Patents, 1048; Skelly Oil Co. v. Powerine Co., 86 F.2d 752, 24 C.C.P.A., Patents, 790, 'It [Congress] never intended that a trade-mark should be registered if its use was likely to cause confusion or mistake in the mind of the public or if purchasers were likely to be deceived by its use.' Sun-Maid Raisin Growers of California v. American Grocer Co., supra. * * * "

See also Lucky Heart Laboratories, Inc. v. Neumann, 154 F.2d 519, 521, 33 CCPA 1034, where it was stated:

"This court has held repeatedly that the primary purpose of that portion of the trade-mark law with which we are here concerned is to protect the public. See In re Laskin Brothers, Inc., 146 F.2d 308, 32 C.C.P.A., Patents, 820; Schering & Glatz, Inc. v. Sharp & Dohme, Inc., 146 F.2d 1019, 32 C.C.P.A. 827. * * "

Although these decisions relate to the provisions of the 1905 Act, I believe the same rationale is applicable in the consideration of the Lanham Act. Although we cannot prohibit the use of a mark, we can prohibit registration and all the rights and privileges that go with it. Whatever protection this affords the public, it is our duty to give under these circumstances.

I also believe that when the public interest is involved it takes precedence over the equitable rights of an individual insofar as the registration of a trademark is concerned. See Skookum Packers' Association v. Pacific Northwest Canning Co., 45 F.2d 912, 18 CCPA 792 and Abell v. Beatrice Creamery Co., 79 F.2d 751, 23 CCPA 735.

Furthermore, it is not clear to me how equitable rights existing between two parties[1] can justify the issuance of a registration in contravention of the express language of the statute.

For these reasons, I am of the opinion that the decision of the board should be *reversed*. However, I do not believe that applicant is entitled to registration even under the conditions suggested by the majority.

1. Section 19 of the Lanham Act (15 U.S.C. § 1069, 15 U.S.C.A. § 1069).