**INTERBANK CARD ASSOCIATION,**
Plaintiff,

v.

**Dudley L. SIMMS, III, Individually, and Piece Goods Shop, Incorporated,**
Defendants.

**No. C–75–425–WS.**

United States District Court,
M. D. North Carolina,
Winston-Salem Division.

March 3, 1977.

William Kearns Davis, of Deal, Hutchins & Minor, Winston-Salem, N. C., J. Timothy Hobbs, of Mason, Fenwick & Lawrence, Washington, D. C., for plaintiff.

R. Bradford Leggett and James E. Humphreys, Jr., of Hatfield & Allman, Winston-Salem, N. C., for defendants.

## MEMORANDUM ORDER AND PRELIMINARY INJUNCTION

HIRAM H. WARD, District Judge.

On October 7, 1975, the plaintiff, Interbank Card Association (Interbank), a non-profit corporation organized under the laws of the State of Delaware and doing business in New York, New York, commenced this action against Piece Goods Shop, Inc. (Piece Goods) and Dudley L. Simms (Simms). Piece Goods is incorporated under the laws of the State of North Carolina and is located in Winston-Salem, North Carolina. Simms is a citizen of North Carolina and resides in Winston-Salem, North Carolina.

Interbank alleged that defendants Simms and Piece Goods were distributing tract cards and adhesive display items which bore resemblance to the Master Charge credit cards and Master Charge identification stickers. Through 8,700 licensed member banks, Interbank maintains the largest credit card operation in the world. Its cards are recognized in 110 countries. On December 31, 1976, Interbank had issued 44 million credit cards and maintained 26 million separate credit accounts. Under United States law, Interbank is the owner of the following marks: "i" in a circle; the words MASTER CHARGE; and the words MASTER CHARGE imposed on an Interlocking Circle Design. The material being distributed by the defendants bore two interlocking circles with the words "Give Christ charge of your life" imposed on the interlocking circles. Additionally the lower right side of the face of the defendants' religious material bore a small black circle containing the words "he's 1st."

Interbank brought this action under 15 U.S.C. § 1051, *et seq.,* and 28 U.S.C. § 1331 and 1338 to enjoin both preliminarily and permanently the defendants from producing and distributing the religious tract cards and display stickers which closely resemble its Master Charge credit cards and window identification stickers.

Before answering the complaint, defendant Simms moved to have this suit dismissed because it violated his First Amendment rights. Piece Goods also moved for a dismissal asserting that prior to the commencement of this action all involvement in the distribution of the tract cards had ceased and as to Piece Goods the matter was moot. Interbank moved for partial summary judgment on Simms' First Amendment defense. In an order dated July 30, 1976, this Court denied the defendants' motions to dismiss. The Court likewise denied the plaintiff's request for partial summary judgment on Simms' First Amendment defense, but that denial was without prejudice to a refiling of that motion at a later date. Following discovery, Interbank refiled its motion for partial summary judgment on Simms' First Amendment defense and also moved for a preliminary injunction. On February 25, 1977, the Court heard evidence and oral arguments on Interbank's motions. For the reasons which follow, the Court is of the opinion that both motions should be granted.

### (1) *Partial Summary Judgment*

■ A trademark or service mark infringement has, as yet, not been established. However, for the purpose of this motion, the presence of an infringement must exist as an assumption. The question which the Court decides is, assuming that an infringement violation is present, whether the defendant's conduct would be protected by his First Amendment rights to freedom of expression and freedom of religion.

■ This is an action by the plaintiff to protect a private property right. The plaintiff seeks no damages, wishing only to prohibit the defendants from trafficking on its mark. For the defendant's constitutional protections to apply there must be some governmental involvement. The Court finds the requisite governmental involvement conspicuously absent in the present matter. The Supreme Court in *Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1947), found state action present in an attempt to enforce a racially restrictive protective covenant. However, since the property right to be protected was a blatant tool of racial discrimination, *Shelley* is easily distinguished. The Court in *Lloyd Corp. v. Tanner,* 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972), and *Hudgens v. National Labor Relations Board,* 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976), made clear that one's rights of self expression were not without bounds. Specifically, in *Lloyd* the Court, in holding that the owner of a shopping center could prohibit the distribution of antiwar materials, stated:

> It would be an unwarranted infringement of property rights to require them to yield to the exercise of First Amendment rights under circumstances where adequate alternative avenues of communication exist. Such an accommodation would diminish property rights without significantly enhancing the asserted right of free speech.
>
> 407 U.S. at 567, 92 S.Ct. at 2228, 33 L.Ed.2d at 141.

In holding that the requisite governmental involvement is absent the Court takes note of specific instances where intellectual property rights have been protected from infringement in the name of religious freedom. In *Purcell v. Summers,* 145 F.2d 979 (4th Cir. 1944), the Fourth Circuit prohibited a splinter religious organization from utilizing the name United Episcopal Church South, the name of a defunct church which had merged with two other churches to form the United Methodist Church. The court held that the property rights, including the name of the former United Episcopal Church South, merged into the new United Methodist Church and that the United Methodist Church was entitled to

protect the name United Episcopal Church South against infringement by a newly organized religious order seeking to capitalize upon the goodwill of the former church.

Although it cannot be denied that a strong First Amendment argument was not present in that case or that the courts have significantly expanded the rights secured by the First Amendment since *Purcell,* this Court finds the language of *National Board of YWCA v. YWCA,* 335 F.Supp. 615 (D.C. S.C.1971), persuasive:

> By granting to a religious organization the exclusive use of a name, the Patent Office only deprives other religious groups of the use of *that* particular name, and such grant does not deny such other religious organizations the opportunity to establish competing groups having the same purpose but with different names. 335 F.Supp. at 625.

The Court finds that this logic thoroughly supports the position that the defendant in the name of the First Amendment cannot as a matter of law infringe upon the plaintiff's service mark or trademark in the Master Charge credit cards and window stickers.

Therefore, the plaintiff's motion for partial summary judgment on the validity of the defendant's First Amendment defense is granted.

### (2) *Preliminary Injunction*

■■■ Interbank seeks to preclude the defendants during the pendency of this action from producing and distributing religious tract cards and window display stickers which closely resemble the plaintiff's Master Charge credit cards and window identification stickers. A preliminary injunction is an equitable device to maintain the status quo, the issuance of which is within the sound discretion of the court.

In *Blackwelder Furniture Company v. Seilig Manufacturing Company, Inc.,* 550 F.2d 189, 1977, the Fourth Circuit recently affirmed the legal standard for granting a preliminary injunction established in *Sinclair Refining Co. v. Midland Oil Co.,* 55 F.2d 42 (4th Cir. 1932), and reiterated in

*West Virginia Highlands Conservancy v. Island Creek Coal Co.,* 441 F.2d 232 (4th Cir. 1971).

In *Blackwelder* the court stated:

> . . . the first step in a Rule 65(a) situation is for the court to balance the "likelihood" of irreparable harm to the plaintiff against the "likelihood" of harm to the defendant; and if a decided imbalance of hardship should appear in plaintiff's favor, then [quoting Judge Jerome Frank] "it will ordinarily be enough that plaintiff has raised questions going to the merit so serious . . . as to make them fair ground for litigation . . ." (citations omitted) The importance of probability of success increases as the probability of irreparable injury diminishes, . . . .

At 195.

At present 7.4 million Master Charge look-alike tract cards have been printed; 3 million of the tract cards remain undistributed and are presently in defendant Simms' possession. Thirty thousand adhesive display stickers have been printed. The plaintiff claims that its need for protection stems from the possibility that its mark will be diluted, that confusion will cause user dissatisfaction, and that the plastic cards which the defendants are distributing can be embossed and used to charge items with unsuspecting merchants offering Interbank service. Specific instances of confusion have been reported to Interbank and complaints concerning the look-alike tract cards have been received from member banks located in the Midwestern states, Southwestern states, Southeastern states, and Northeastern states. The Court is somewhat at a loss to understand how the defendants' Christ charge cards could be used to charge items with merchants honoring Interbank cards, but the Court is seriously concerned that the defendants' continued distribution of the tract cards and window display stickers will dilute the plaintiff's mark and cause continued user dissatisfaction. Viewed at a glance or at a distance the plaintiff's credit cards and the defendants' Christ charge cards are indistinguishable.

Unsuspecting customers have been and will continue to believe that merchants displaying Christ charge display items will honor or accept Master Charge credit cards. Consequently, it appears most likely that the plaintiff will suffer at least some of the irreparable injury that it has alleged. Moreover, the Court is unconvinced that the defendants will suffer any probable injury in being required to cease the distribution of cards and window stickers pending the outcome of this litigation. The defendants may utilize numerous means of conveying their commendable religious message without the apparent appropriation of the plaintiff's marks.

Under *Blackwelder* the plaintiff need not show irreparable harm but only that its likelihood of irreparable harm if the preliminary injunction is not granted would exceed the likelihood of irreparable harm the defendant would suffer if the preliminary injunction is granted. Applying this standard, it is concluded that the possibility of injury which does exist to the plaintiff outweighs any injury the defendants would suffer.

Turning now to the second test required by *Blackwelder,* it seems most obvious that the plaintiff has a "probable right" in the words of *Sinclair Refining Co. v. Midland Oil Co., supra,* or that the plaintiff has not embarked on "frivolous litigation" in the words of *West Virginia Highlands v. Island Creek Coal Co., supra.* The defendants' intentional use of devices similar to the plaintiff's trademark is exacerbated when one realizes that the devices are utilized in an identical fashion on small cards and on similar size window stickers as the plaintiff displays its protected marks. *Cf. Boston Professional Hockey Association v. Dallas Cap & Emblem Manufacturing, Inc.,* 510 F.2d 1004 (5th Cir. 1975).

The Court in exercising its discretion on this matter has carefully considered both the public interest and the possibility of substantial harm to other interested parties. In both instances the Court feels that the equities weigh heavily in favor of protecting the plaintiff's property rights despite the minor limitation on the defendants' choice of methods to espouse their religious convictions. Therefore, the plaintiff's motion for a preliminary injunction is granted.

## ORDER

Having considered the parties' motions, responses, and exhibits, as well as the testimony and oral arguments presented on February 25, 1977, it is hereby ORDERED, ADJUDGED, and DECREED:

(1) That the plaintiff's motion for partial summary judgment on Simms' First Amendment defense be, and the same hereby is, granted; and

(2) That the defendants, their officers, agents, servants, employees, and those persons in active concert or participation with them, be, and the same hereby are, enjoined during the pendency of this action from having printed or distributing, directly or indirectly, (a) small Christ charge cards similar in size and bearing a close resemblance to the plaintiff's Master Charge credit card, (b) the interlocking circles Christ charge window display stickers similar in size and appearance to the plaintiff's identification stickers, and (c) any other card or sticker similar in appearance to items utilized by the plaintiff in its business and produced and distributed by the defendants with an intent to traffic on the plaintiff's recognition.

It is a condition of the portion of this order dealing with the preliminary injunction that the plaintiff shall file in the office of the Clerk of this Court a bond approved by the Clerk in the amount of $15,000, by which the plaintiff shall undertake and agree that if it is finally determined that this order should not have been issued, that the plaintiff will pay the defendants such damages, up to the aforesaid amount, as the defendants may have suffered by reason of the issuance of this order.