**DALLAS COWBOYS CHEERLEADERS, INC., Plaintiff-Appellee,**

v.

**PUSSYCAT CINEMA, LTD. and Michael Zaffarano, Defendants-Appellants.**

**No. 950, Docket 79–7179.**

United States Court of Appeals, Second Circuit.

Argued April 6, 1979.

Decided Aug. 14, 1979.

**202**

Herbert S. Kassner, New York City (Kassner & Detsky, P. C., Ralph J. Schwarz, Jr., New York City, of counsel), for defendants-appellants.

Asa Rountree, New York City (Debevoise, Plimpton, Lyons & Gates, Richard I. Janvey, Nicole A. Gordon, New York City, of counsel), for plaintiff-appellee.

Before MULLIGAN, TIMBERS and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

This is an appeal from orders of the United States District Court for the Southern District of New York granting plaintiff's motions for a preliminary injunction prohibiting Pussycat Cinema, Ltd., and Michael Zaffarano from distributing or exhibiting the motion picture "Debbie Does Dallas." On March 14 this Court granted defendants' motion to stay the injunction and ordered an expedited appeal. The case was argued before us on April 6, following which we dissolved the stay and reinstated the preliminary injunction. We now affirm the orders of the district court.

Plaintiff in this trademark infringement action is Dallas Cowboys Cheerleaders, Inc., a wholly owned subsidiary of the Dallas Cowboys Football Club, Inc. Plaintiff employs thirty-six women who perform dance and cheerleading routines at Dallas Cowboys football games. The cheerleaders have appeared frequently on television programs and make commercial appearances at such public events as sporting goods shows and shopping center openings. In addition, plaintiff licenses others to manufacture and distribute posters, calendars, T-shirts, and the like depicting Dallas Cowboys Cheerleaders in their uniforms. These products have enjoyed nationwide commercial success, due largely to the national exposure the Dallas Cowboys Cheerleaders have received through the news and entertainment media. Moreover, plaintiff has expended large amounts of money to acquaint the public with its uniformed cheerleaders and earns substantial revenue from their commercial appearances.

At all the football games and public events where plaintiff's cheerleaders appear and on all commercial items depicting the cheerleaders, the women are clad in plaintiff's distinctive uniform. The familiar outfit consists of white vinyl boots, white shorts, a white belt decorated with blue stars, a blue bolero blouse, and a white vest decorated with three blue stars on each side of the front and a white fringe around the bottom. In this action plaintiff asserts that it has a trademark in its uniform and that defendants have infringed and diluted that trademark in advertising and exhibiting "Debbie Does Dallas."

Pussycat Cinema, Ltd., is a New York corporation which owns a movie theatre in New York City; Zaffarano is the corporation's sole stockholder. In November 1978 the Pussycat Cinema began to show "Debbie Does Dallas," a gross and revolting sex film whose plot, to the extent that there is one, involves a cheerleader at a fictional high school, Debbie, who has been selected to become a "Texas Cowgirl." [1] In order to

---

1. The official appellation of plaintiff's cheerleaders is "Dallas Cowboys Cheerleaders", but the district court found that plaintiff also has a trademark in the names "Dallas Cowgirls" and "Texas Cowgirls" which have been made popular by the media.

raise enough money to send Debbie, and eventually the entire squad, to Dallas, the cheerleaders perform sexual services for a fee. The movie consists largely of a series of scenes graphically depicting the sexual escapades of the "actors". In the movie's final scene Debbie dons a uniform strikingly similar to that worn by the Dallas Cowboys Cheerleaders and for approximately twelve minutes of film footage engages in various sex acts while clad or partially clad in the uniform. Defendants advertised the movie with marquee posters depicting Debbie in the allegedly infringing uniform and containing such captions as "Starring Ex Dallas Cowgirl Cheerleader Bambi Woods" and "You'll do more than cheer for this X Dallas Cheerleader." [2] Similar advertisements appeared in the newspapers.

Plaintiff brought this action alleging trademark infringement under section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), unfair competition, and dilution of trademark in violation of section 368–d of the New York General Business Law. The district court, in its oral opinion of February 13, 1979, found that "plaintiff ha[d] succeeded in proving by overwhelming evidence the merits of each one of its contentions." Defendants challenge the validity of all three claims.

A preliminary issue raised by defendants is whether plaintiff has a valid trademark in its cheerleader uniform.[3] Defendants argue that the uniform is a purely functional item necessary for the performance of cheerleading routines and that it therefore is not capable of becoming a trademark. We do not quarrel with defendants' assertion that a purely functional item may not become a trademark. *See In re Honeywell, Inc.,* 532 F.2d 180, 182–83 (C.C.P.A.1976). However, we do not agree that all of characteristics of plaintiff's uniform serve only a functional purpose or that, because an item is in part incidentally functional, it is necessarily precluded from being designated as a trademark. Plaintiff does not claim a trademark in all clothing designed and fitted to allow free movement while performing cheerleading routines, but claims a trademark in the particular combination of colors and collocation of decorations that distinguish plaintiff's uniform from those of other squads.[4] *Cf. Socony Vacuum Oil Co. v. Rosen,* 108 F.2d 632, 636 (6th Cir. 1940); *John Wright, Inc. v. Casper Corp.,* 419 F.Supp. 292, 317 (E.D.Pa.1976). It is well established that, if the design of an item is nonfunctional and has acquired secondary meaning,[5] the design may become a trademark even if the item itself is functional. *Ives Laboratories, Inc. v. Darby Drug Co.,* 601 F.2d 631, 642 (2d Cir. 1979); *Truck Equipment Service Co. v. Fruehauf Corp.,* 536 F.2d 1210, 1215 (8th Cir.), *cert. denied,* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). Moreover, when a feature of the construction of the item is arbitrary, the feature may become a trademark even though it serves a useful purpose. *In*

---

**2.** Bambi Woods, the woman who played the role of Debbie, is not now and never has been a Dallas Cowboys Cheerleader.

**3.** At present plaintiff does not have a registered trademark or service mark in its uniform. However, plaintiff still may prevail if it establishes that it has a common law trademark or service mark. *See Boston Professional Hockey Association v. Dallas Cap & Emblem Mfg., Inc.,* 510 F.2d 1004, 1010 (5th Cir.), *cert. denied,* 423 U.S. 991, 96 S.Ct. 408, 46 L.Ed.2d 312 (1975); New York General Business Law § 368–d. Whether plaintiff's uniform is considered as a trademark or a service mark, the standards for determining infringement are the same. *West & Co. v. Arica Institute, Inc.,* 557 F.2d 338, 340 n. 1 (2d Cir. 1977).

**4.** Plaintiff's design imparts a western flavor appropriate for a Texas cheerleading squad. The design is in no way essential to the performance of cheerleading routines and to that extent is not a functional aspect of the uniform.

**5.** Secondary meaning is "[t]he power of a name or other configuration to symbolize a particular business, product or company . . . ." *Ideal Toy Corp. v. Kenner Products Division of General Mills Fun Group, Inc.,* 443 F.Supp. 291, 305 n. 14 (S.D.N.Y.1977). There is no dispute in this case that plaintiff's uniform is universally recognized as the symbol of the Dallas Cowboys Cheerleaders.

re Deister Concentrator Co., 289 F.2d 496, 506, 48 C.C.P.A. 952 (1961); Fotomat Corp. v. Cochran, 437 F.Supp. 1231 (D.Kan.1977). Thus, the fact that an item serves or performs a function does not mean that it may not at the same time be capable of indicating sponsorship or origin, particularly where the decorative aspects of the item are nonfunctional. See In re Penthouse International Ltd., 565 F.2d 679, 681 (Cust. & Pat.App.1977). See also In re World's Finest Chocolate, Inc., 474 F.2d 1012 (Cust. & Pat.App.1973). In the instant case the combination of the white boots, white shorts, blue blouse, and white star-studded vest and belt is an arbitrary design which makes the otherwise functional uniform trademarkable.[6]

Defendants argue that Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), and Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), preclude a finding that plaintiff's uniform is a trademark. We disagree. In Sears-Compco the Court held merely that a state may not, through its law banning unfair competition, undermine the federal patent laws by prohibiting the copying of an article that is protected by neither a federal patent nor a federal copyright. For the Court to have held otherwise would have been to allow states to grant a monopoly to a producer where the federal government had specifically determined that free competition should prevail. This consideration does not apply in a trademark infringement action where the plaintiff does not assert exclusive rights to the sale of a product but merely to a mark indicating its origin or sponsorship. The question presented therefore is one of trademark law, and it is clear that Sears-Compco did not redefine the permissible scope of the law of trademarks insofar as it applies to origin and sponsorship. See Sears, Roebuck & Co. v. Stiffel, supra, 376 U.S. at 232, 84 S.Ct. 784; Ives Laboratories, Inc. v. Darby Drug Co., supra, at 642 nn. 13–14; Flexitized, Inc. v. National Flexitized Corp., 335 F.2d 774, 781 n. 4 (2d Cir. 1964), cert. denied, 380 U.S. 913, 85 S.Ct. 889, 13 L.Ed.2d 799 (1965); Rolls-Royce Motors Ltd. v. A & A Fiberglass, Inc., 428 F.Supp. 689, 692 (N.D.Ga.1977).

Having found that plaintiff has a trademark in its uniform, we must determine whether the depiction of the uniform in "Debbie Does Dallas" violates that trademark. The district court found that the uniform worn in the movie and shown on the marquee closely resembled plaintiff's uniform and that the public was likely to identify it as plaintiff's uniform. Our own comparison of the two uniforms convinces us that the district court was correct,[7] and defendants do not seriously contend that the uniform shown in the movie is not almost identical with plaintiff's. Defendant's contention is that, despite the striking similarity of the two uniforms, the public is unlikely to be confused within the meaning of section 43(a) of the Lanham Act.

Defendants assert that the Lanham Act requires confusion as to the origin of the film, and they contend that no reasonable person would believe that the film originated with plaintiff. Appellants read the confusion requirement too narrowly. In order to be confused, a consumer need not believe that the owner of the mark actually produced the item and placed it on the market. See Syntex Laboratories, Inc. v. Norwich Pharmacal Co., 437 F.2d 566, 568 (2d Cir. 1971); Boston Professional Hockey Association v. Dallas Cap & Emblem Mfg., Inc., 510 F.2d 1004, 1012 (5th Cir.), cert. denied, 423 U.S. 868, 96 S.Ct. 132, 46

---

**6.** Although color alone is not capable of becoming a trademark, a combination of colors together with a distinctive arbitrary design may serve as a trademark. Quabaug Rubber Co. v. Fabiano Shoe Co., 567 F.2d 154, 161 (1st Cir. 1977).

**7.** To the extent that a finding of likelihood of confusion is based upon a comparison of the two marks, see Beech-Nut, Inc. v. Warner Lambert Co., 346 F.Supp. 547, 550 (S.D.N.Y.1972), aff'd, 480 F.2d 801 (2d Cir. 1973), the appellate court may make an independent judgment as to the similarity of the marks. See Hills Brothers Coffee, Inc. v. Hills Supermarkets, Inc., 428 F.2d 379, 380 (2d Cir. 1970).

L.Ed.2d 98 (1975). The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement. In the instant case, the uniform depicted in "Debbie Does Dallas" unquestionably brings to mind the Dallas Cowboys Cheerleaders. Indeed, it is hard to believe that anyone who had seen defendants' sexually depraved film could ever thereafter disassociate it from plaintiff's cheerleaders. This association results in confusion which has "a tendency to impugn [plaintiff's services] and injure plaintiff's business reputation . . . ." *See Coca-Cola Co. v. Gemini Rising, Inc.,* 346 F.Supp. 1183, 1189 (E.D.N.Y.1972). In the *Coca-Cola* case the defendant had manufactured a poster showing the familiar red and white Coca-Cola design with the word "Cocaine" substituted for "Coca-Cola". As in this case, the defendant there argued that no reasonable purchaser would be confused by the poster; however the court held that a person of average intelligence could believe "that defendant's poster was just another effort . . . by plaintiff to publicize its product," although in a distasteful way. *Id.* at 1190. In another case, a similarity between the plaintiff's and the defendant's trade slogans was held to confuse the public and "[threaten] injury to the good name of the first user." *See Chemical Corp. of America v. Anheuser-Busch, Inc.,* 306 F.2d 433 (5th Cir. 1962), *cert. denied,* 372 U.S. 965, 83 S.Ct. 1089, 10 L.Ed.2d 129 (1963). There, the defendant advertised its insecticide by changing plaintiff's slogan "Where there's life, there's Bud" to the slogan "Where there's life, there's bugs." The court's reasoning in upholding the finding of unfair competition is equally applicable here:

> The gist of this action is that the plaintiff has a property interest in the slogan, built up at great expense, and that it and its products are favorably known as a result of its use of this property right and

that the defendant, with full knowledge of the right and with the purpose of appropriating some of the value engendered in the minds of the public by its use has used, and proposes further to make use of, a deceptively similar slogan in a manner that will bring direct financial loss to the plaintiff, both by reason of confusing the source of the defendant's product, and by reason of the peculiarly unwholesome association of ideas when the word "bugs" was substituted in the slogan for the word "Bud," referring to a food product.

*Id.* at 437.

Plaintiff expects to establish on trial that the public may associate it with defendants' movie and be confused into believing that plaintiff sponsored the movie, provided some of the actors, licensed defendants to use the uniform, or was in some other way connected with the production. The trademark laws are designed not only to prevent consumer confusion but also to protect "the synonymous right of a trademark owner to control his product's reputation." *James Burrough Ltd. v. Sign of the Beefeater, Inc.,* 540 F.2d 266, 274 (7th Cir. 1976) (Markey, C. J.). The district court did not err in holding that plaintiff had established a likelihood of confusion within the meaning of the Lanham Act sufficient to entitle it to a preliminary injunction and that plaintiff had a right to preliminary relief on its claims of unfair competition and dilution.[8] *See id.* at 274 n. 16.

Defendants assert that the copyright doctrine of "fair use" should be held applicable to trademark infringement actions and that we should apply the doctrine to sanction their use of a replica of plaintiff's uniform. Fair use is "a 'privilege in others than the owner of a copyright to use the copyrighted material in a reasonable manner without his consent . . . .'" *Rosemont Enterprises, Inc. v. Random*

---

8. Even if plaintiff had not established a likelihood of confusion, it would be entitled to relief under New York General Business Law § 368–d, which permits the enjoining of trademark copying despite the absence of confusion as to source or sponsorship. *See Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.,* 42 N.Y.2d 538, 543–44, 399 N.Y.S.2d 628, 369 N.E.2d 1162 (1977).

House, Inc., 366 F.2d 303, 306 (2d Cir. 1966) (quoting Ball, *The Law of Copyright and Literary Property* 260 (1944)), *cert. denied,* 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967). The fair use doctrine allows adjustments of conflicts between the first amendment and the copyright laws, *see Wainwright Securities Inc. v. Wall Street Transcript Corp.,* 558 F.2d 91, 95 (2d Cir. 1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978), and is designed primarily to balance "the exclusive rights of a copyright holder with the public's interest in dissemination of information affecting areas of universal concern, such as art, science and industry." *Id.* at 94. It is unlikely that the fair use doctrine is applicable to trademark infringements;[9] however, we need not reach that question. Although, as defendants assert, the doctrine of fair use permits limited copyright infringement for purposes of parody, *see Berlin v. E. C. Publications, Inc.,* 329 F.2d 541 (2d Cir. 1964), *cert. denied,* 379 U.S. 822, 85 S.Ct. 46, 13 L.Ed.2d 33 (1965), defendants' use of plaintiff's uniform hardly qualifies as parody or any other form of fair use. *See Walt Disney Productions v. Mature Pictures Corp.,* 389 F.Supp. 1397, 1398 (S.D.N.Y.1975).

■ Nor does any other first amendment doctrine protect defendants' infringement of plaintiff's trademark. That defendants' movie may convey a barely discernible message[10] does not entitle them to appropriate plaintiff's trademark in the process of conveying that message. *See Interbank Card Association v. Simms,* 431 F.Supp. 131 (M.D.N.C.1977); *Edgar Rice Burroughs, Inc. v. Manns Theatres,* 195 U.S.P.Q. 159 (C.D.Cal.1976); *Coca-Cola Co. v. Gemini Rising, Inc., supra,* 346 F.Supp. at 1191. Plaintiff's trademark is in the nature of a property right, *see Hanover Milling Co. v. Metcalf,* 240 U.S. 403, 413, 36 S.Ct. 357, 60 L.Ed. 713 (1915); *Alfred Dunhill of London, Inc. v. Dunhill Tailored Clothes, Inc.,*

293 F.2d 685, 692, 49 C.C.P.A. 730 (1961), *cert. denied,* 369 U.S. 864, 82 S.Ct. 1030, 8 L.Ed.2d 84 (1962), and as such it need not "yield to the exercise of First Amendment rights under circumstances where adequate alternative avenues of communication exist." *Lloyd Corp. v. Tanner,* 407 U.S. 551, 567, 92 S.Ct. 2219, 2228, 33 L.Ed.2d 31 (1972). Because there are numerous ways in which defendants may comment on "sexuality in athletics" without infringing plaintiff's trademark, the district court did not encroach upon their first amendment rights in granting a preliminary injunction. *See Walt Disney Productions v. Air Pirates,* 581 F.2d 751, 758–59 (9th Cir. 1978); *Reddy Communications, Inc. v. Environmental Action Foundation,* 199 U.S.P.Q. 630, 634 (D.D. C.1977).

■ For similar reasons, the preliminary injunction did not constitute an unconstitutional "prior restraint". This is not a case of government censorship, but a private plaintiff's attempt to protect its property rights. The propriety of a preliminary injunction where such relief is sought is so clear that courts have often issued an injunction without even mentioning the first amendment. *See, e. g., Gilliam v. American Broadcasting Cos.,* 538 F.2d 14 (2d Cir. 1976); *Edgar Rice Burroughs, Inc. v. Manns Theatres, supra,* 195 U.S.P.Q. 159. The prohibition of the Lanham Act is content neutral, *cf. Schacht v. United States,* 398 U.S. 58, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970), and therefore does not arouse the fears that trigger the application of constitutional "prior restraint" principles.

■ The district court's issuance of a preliminary injunction is reversible only for abuse of discretion. *Taylor Wine Co. v. Bully Hill Vineyards, Inc.,* 569 F.2d 731, 732 n. 1 (2d Cir. 1978). A preliminary injunction is proper where the plaintiff establishes possible irreparable harm and either (1)

---

9. Because the primary purpose of the trademark laws is to protect the public from confusion, *see W. E. Basset Co. v. Revlon, Inc.,* 354 F.2d 868, 871 (2d Cir. 1966), it would be somewhat anomalous to hold that the confusing use of another's trademark is "fair use". *See also*

*Truck Equipment Service Co. v. Fruehauf Corp., supra,* 536 F.2d at 1215.

10. The question whether "Debbie Does Dallas" is obscene is not before us.

probable success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. *Selchow & Righter Co. v. McGraw-Hill Book Co.,* 580 F.2d 25, 27 (2d Cir. 1978). Plaintiff has established a probability of success at trial, and the confusion engendered by defendants' movie would result in irreparable harm to plaintiff were defendants not enjoined from its distribution and exhibition. *See Hills Brothers Coffee, Inc. v. Hills Supermarkets, Inc.,* 428 F.2d 379, 380–81 (2d Cir. 1970); *see also Taylor Wine Co. v. Bully Hill Vineyards, Inc., supra,* 569 F.2d at 732 n. 1. Accordingly, we affirm the orders of the district court.

Affirmed.